■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE DE OLIVEIRA, JR., Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Tioga County (Siedlecki, J.), rendered April 18, 1984, upon a verdict convicting defendant of the crime of murder in the second degree.

Viewing the evidence produced at defendant's trial in a

light most favorable to the People, as we must since they prevailed, and giving the prosecution the benefit of every reasonable inference to be drawn from the facts *(People v Lewis,* 64 NY2d 1111, 1112; *People v Kennedy,* 47 NY2d 196, 203), we conclude that defendant's guilt has been proven beyond a reasonable doubt.

Defendant and his wife, decedent Constance De Oliveira (Connie), had been married eight years when, in 1983, the marriage began to deteriorate. They lived separate and apart for two weeks in August of that year after defendant struck his wife in the face because she rejected his sexual advances. Early in September, they reunited for a three-month trial period; Connie's return was conditioned on their having no sexual relations.

The events immediately preceding the murder began on the evening of Friday, September 9, 1983, when defendant arrived home after working late. After their two young daughters were asleep, Connie and defendant watched television until 1:00 A.M., at which time a friend stopped in to see if her daughters were babysitting for the De Oliveiras; apprised they were not there, she remained for a few minutes and spoke with Connie. Defendant was observed lying on the living room floor dozing or watching television. According to defendant, shortly after this visit, his wife informed him she was going for a ride, put on the clothing she was eventually found dead in, and left in her own car. At 1:20 A.M., a neighbor walking past the De Oliveira home heard a woman or child sobbing softly and saying, "Stay away from me." Twenty minutes later, another witness spotted Connie's car parked barely off Day Hollow Road in a rest area located 3.2 miles from the De Oliveira residence. At 4:00 A.M., her boyfriend of about nine months saw her car in front of his apartment and shouted to her either, "Not tonight" or, "Not tonight, Connie", a reference to his lack of interest in having sex that evening.

At approximately 4:55 A.M., a 17-year-old newspaper delivery boy noticed red taillights lit on a car in the Day Hollow Road rest area. The boy then proceeded easterly on Day Hollow Road away from the rest area, stopping under a street light to fix the fender of his bicycle. At that point he was overtaken by a man with facial hair, breathing heavily, riding a red 10-speed bicycle; the victim owned a red 10-speed bike. Resuming his journey, the boy followed the man for approximately 2½ miles taking note that the man rode erratically, as though inexperienced. Apropos of this latter testimony, there was other evidence that defendant, who admittedly seldom

rode a bicycle, did so with difficulty. At the intersection with Route 26, the man turned left, then disappeared into a nearby housing development where defendant resided.

About 5:00 A.M., that day, two drivers traveling in opposite directions along the same section of Day Hollow Road spied the victim's car parked well within the rest area; the first saw two bicyclists and identified the front person as about 18 years old and clean shaven; the second driver remembered with particularity that the front cyclist had red hair and a red beard—as did defendant—and, at trial, further testified that defendant had the same profile.

Saturday morning, September 11, 1983, defendant and his wife's family discovered she was missing and undertook a search. Their efforts proved unfruitful and law enforcement authorities were contacted. At 12:40 P.M., the following day, Sunday, defendant spoke at length with his wife's co-worker; she quoted him as saying, "What am I going to tell the girls * * * [w]hen they find [Connie] in the car dead", and suggesting Day Hollow Road as a place to search because Connie had a friend who lived there. Given the proximity of Day Hollow Road, this suggestion is noteworthy, for in recounting to the police the extensive efforts he made to locate his wife, defendant's failure to search this area is inexplicable. That afternoon, Connie's sister located the missing car in the rest area. Connie's dead body was found locked in the trunk. Death was caused by strangulation with a pair of her own pantyhose; knots in the two ends of the pantyhose were apparently used to secure the killer's grip. The victim's car keys and undisturbed purse were also in the trunk. That evening, defendant gave a statement to the police in which he downplayed the marital problems the parties had experienced.

Another witness for the People testified that, while confined in the Tioga County Jail with defendant pending the murder trial, defendant acknowledged that, before the murder, he had knowledge of his wife's adultery. At the close of the People's case and again at the close of the evidence, defendant unsuccessfully sought dismissal of the indictment on the ground that the People failed to prove a prima facie case. Defendant's chief claim on appeal is that the evidence was insufficient as a matter of law. We disagree and find the determination of guilt consistent with and flowing naturally from the proven facts (see, People v Kennedy, 47 NY2d 196, 202, supra).

The prosecution established motive, opportunity and identification of defendant near the scene where the victim's body

was found, as well as incriminating statements made by defendant prior to discovery of the body which the jury could have interpreted as admissions (see, People v Rumble, 45 NY2d 879, 880). The hypothesis of defendant's guilt not only accounts for all the facts, but it is also absolutely inconsistent with defendant's theory of innocence (see, People v Montanez, 41 NY2d 53, 57), for implicit in the jury's verdict is the reasonable conclusion that it was indeed defendant who hurriedly bicycled from the site where his wife was found and toward his home at 5:00 A.M., on the morning of the killing. Moreover, his statements to his wife's co-worker at a time when Connie was still missing indicate knowledge both of her death and the whereabouts of her body.

Nor do we find persuasive defendant's other arguments addressed to various evidentiary rulings, the allegedly late disclosure of *Brady* material, and the adequacy of the identification testimony. With respect to the People's application, made over the telephone, for a no-knock search warrant, it suffices to note that the police substantially complied with the requirements of CPL article 690 (see, People v Brown, 40 NY2d 183, 188; People v Bowers, 92 AD2d 669, 670).

Judgment affirmed. Kane, J. P., Casey, Weiss, Yesawich, Jr., and Harvey, JJ., concur.