*480 OPINION OF THE COURT
Kaye, J.
 This appeal presents two questions: first, whether the doctrine of collateral estoppel can be applied to issues of "evidentiary” fact,[1] and second, if so, whether on the present record such fact issues were necessarily established in defendant’s favor at his first trial, so as to preclude their further litigation in defendant’s second trial. We answer both questions in the affirmative.
The nature of the questions before us requires a full account of both trials.
Defendant was charged in two indictments with robbery and criminal possession of a weapon for two separate incidents, both occurring in Buffalo on the same day, at approximately the same time, within several blocks of each other. The charges in indictment No. 49331B (the Jakiela robbery) stemmed from an incident in which defendant and a knife-wielding companion allegedly robbed Mark Jakiela. The charges in indictment No. 49331A (the Nello robbery) related to an incident in which he and a knife-wielding companion allegedly robbed William Nello. Although the two indictments were initially consolidated for trial, they were ultimately severed when the prosecutor was unable to locate Nello.
The First Trial: The Jakiela Robbery
The prosecution proceeded first with the Jakiela robbery. At *481 trial, two conflicting versions were given of a December 27, 1981 encounter between defendant and Mark Jakiela — one by Jakiela, one by defendant.
Jakiela, 23 years old, testified that at 4:30 a.m., he left Casey’s (a bar) for home, having had nothing to drink except two glasses of wine several hours earlier with dinner. On his way to the Thruway entrance, he drove to a gas station at Porter Avenue and Seventh Street. At trial, Jakiela testified that he had stopped there because he needed to use the restroom; in his statement the morning after the robbery, he claimed that he had gone there for gas. The station, however, was closed and the restroom locked. Jakiela testified that, although the area was well lit and the view from the street unobstructed, he urinated outside the gas station.
According to Jakiela, while he was urinating, someone approached him from behind and placed a 12-inch brown-handled knife at his throat. A second man, identified at trial as defendant, came toward him and asked for his wallet. When Jakiela replied that he had no wallet, defendant demanded cash and his gold ring. After these were handed over, defendant ripped open Jakiela’s shirt, looking for chains, and his companion grazed the victim’s chest with the knife. The two robbers fled in a brown car driving the wrong way down Busti Avenue. Jakiela recorded the license plate number — 900 CFH — on a piece of paper and left for home, passing two police stations he knew were nearby. He contacted the police later that morning. The only other witnesses for the prosecution were defendant’s father, who testified that the license plate number given to police by Jakiela was registered to defendant’s mother, and a friend of complainant, who saw him leave Casey’s at 4:30 a.m.
Defendant portrayed a wholly different encounter. Defendant, 21 years old, testified that he spent the evening and early morning of December 27, 1981 with his fiancé at her family’s home, leaving at approximately 3:00 a.m. for a Buffalo bar. About an hour later, he drove to LaSalle Park to smoke a marihuana cigarette; defendant said he had quarrelled with his fiancé and needed to relax. He parked at the side of the road and, as he began rolling a cigarette, a red car pulled up with Jakiela — whom he had never seen before— inside. Jakiela asked defendant what was happening, and if he could join him. Defendant replied that he was "partying” and *482 agreed to allow Jakiela to join him in his car. The two men shared the cigarette, driving slowly through the park to avoid the police. Halfway around the park, Jakiela made a sexual advance, which defendant rejected, and defendant ordered Jakiela out of the car. Jakiela, who had to walk a half mile across the park on a cold night in order to get back to his car, warned defendant: "I’ll get you for this.” Defendant further testified that the license plate of the brown car he was driving was 900 CFH, that the plate was well lit and thus would have been visible as he drove away, and that he had not been in the immediate vicinity of the gas station that morning or participated in any incident in which Jakiela was robbed.
The defense summation focused on both Jakiela’s lack of credibility and the improbability of his story. Counsel argued that a sober individual who had not had a drink for many hours would hardly have stopped at a deserted gas station at 4:30 a.m. to urinate in a well-lit area in full view of the street, especially when there was a motel/bar across the street. He isolated inconsistencies in Jakiela’s account, and noted Jakiela’s failure to stop at either of two nearby police stations as well as his failure to call his own father as a witness to his condition when he arrived home following the incident.
The District Attorney, similarly, viewed the case as an uncomplicated choice of one story or the other. In the prosecutor’s words, "the issue you have to decide is very simple, it’s a relatively straightforward issue * * * you have to believe Mark Jakiela * * * or, you believe the Defendant, it’s that simple.” He further argued: "if you believe Mark Jakiela’s testimony, there’s no question [defendant] was guilty of the robbery * * * there’s no question Mr. Acevedo is guilty. There’s no question and no question is made by Mr. McLeod [defense counsel] of the possession of the weapon that’s in the Indictment, the proof as Mr. Jakiela testified to was that there was a robbery with another person * * * jewelry and cash were stolen from him * * * The knife was possessed by one of them, the other person was present, and the two of them acted in concert, or acted together * * * Also, the identification, obviously, Mr. Jakiela identifies Frank Acevedo as the person who robbed him. The point of it is, if Mr. Jakiela’s testimony is to be believed, the Defendant is guilty, Mr. McLeod makes no bones about that. So it is a simple matter of you deciding whether to believe that testimony, whether you think beyond a reasonable doubt the Defendant is guilty on *483 the basis of that testimony. You have to decide whether that testimony is truthful.”
The court’s instructions included an extensive charge on credibility. No lesser included offense charge, or instruction on identification, was requested or given. After one hour of deliberation, the jury returned a verdict acquitting defendant on both counts of the indictment.
The Second Trial: The Nello Robbery
A few weeks later, defendant was tried for the Nello robbery by the same counsel before the same Judge. The complaining witness — William Nello — testified under subpoena that he had been at two bars during the early morning of December 27, 1981, where he consumed a total of two beers, and left at 4:20 a.m. He then drove home, which was located at 793 Busti Avenue — three blocks from the alleged Jakiela robbery. He left the car, removed his glasses — Nello testified he was nearsighted — and began walking toward the house, when he heard someone shout "hey”. He then observed a vehicle and, believing he recognized the caller, turned toward the car. He was grabbed from behind by a man who placed a foot-long knife to his throat and threw him into the front seat of the vehicle. The car then drove off, and Nello surrendered two rings, $6, and his keys. After about five minutes, his glasses broken, Nello was pushed from the vehicle. He identified defendant as the driver; without his glasses, however, he was unable to read the license plate. He could recall no distinguishing features of the car except that it was brown and possibly a Chevrolet Nova. Defendant’s mother testified that the interior of the car was dilapidated — both seats were torn and strewn with loose foam — and that there were several distinctive stickers visibly displayed inside and outside the car, as well as a tassel dangling from the rearview mirror, and a religious statue affixed to the dashboard. Nello testified that after the incident he awakened a neighbor, borrowed some dimes, and called his girlfriend. Later they reported the incident to the police.
Near the close of the prosecution’s case, the People called Mark Jakiela to the stand. Defense counsel objected, urging that a jury had already rejected Jakiela’s version of his December 27 encounter with defendant; that Jakiela’s testimony would open a "Pandora’s box”, because it would be impossible for the prosecution to bring out what Jakiela *484 purported to know without raising the events related to that indictment, resulting in a “double jeopardy situation”; and that the defense could not fairly deal with Jakiela’s testimony because he could not be cross-examined effectively without introducing prejudicial matters already disposed of. The trial court overruled the objection and permitted Jakiela to testify that on December 27 between 4:30 and 5:00 a.m., he saw defendant and another man at a gas station located at Porter Avenue and Seventh Street. Defendant was the driver of a brown Chevrolet, with license plate number 900 CFH. He left the station driving the wrong way up Busti Avenue, toward Nello’s house. On cross-examination, defense counsel elicited only that Jakiela was at Casey’s at the same time as Nello.
Following defendant’s testimony in which he described the sexual encounter with Jakiela in the park, denied being at the gas station, and denied participating in a robbery of Nello, the People recalled Jakiela as a rebuttal witness to testify that defendant’s version of the park encounter was false and “on the issue of identity” that the man allegedly with defendant that night had a knife. Defense counsel renewed his objection, reasserting that Jakiela was improperly being permitted to testify to matters previously resolved in defendant’s favor and that the defense had no way of combatting the testimony without placing prejudicial matters before the jury. The court overruled the objection, holding that Jakiela could testify that one of the two men he saw that night had a knife, but that he could not testify as to the particular details of the alleged robbery. On rebuttal, Jakiela denied defendant’s version of their encounter and stated that the man he saw with defendant was holding a foot-long knife.
During deliberations, the jury asked to have Jakiela’s testimony read back. That was its only request. Forty-five minutes after hearing Jakiela’s testimony again, the jury returned a verdict of guilty of robbery and criminal possession of a weapon. A divided Appellate Division affirmed the conviction, disagreeing as to whether the issue of defendant’s presence at the gas station was necessarily decided by the first trial. We now reverse.
The Governing Principles
The doctrine of collateral estoppel, or issue preclusion, operates in a criminal prosecution to bar relitigation of issues necessarily resolved in defendant’s favor at an earlier trial *485 (see, People v Goodman, 69 NY2d 32, 37-38; Ashe v Swenson, 397 US 436, 443). Underlying the doctrine are concerns for conserving the time and resources of courts and litigants, as well as fairness to the defendant. Defendant, having once been acquitted by a jury, should not at a subsequent trial be subjected to the burden of meeting issues that were already necessarily decided in his favor (People v Goodman, 69 NY2d, at 37, supra; People v Berkowitz, 50 NY2d 333, 344; People v Lo Cicero, 14 NY2d 374, 380). By the same token, where the People have had a full and fair opportunity to contest issues, but have failed, it would be inequitable and harassive to again permit the prosecution to establish these same matters, as if the first trial had never taken place (see, People v Plevy, 52 NY2d 58, 64).
Collateral estoppel may implicate constitutional double jeopardy considerations as, for example, where the People seek to relitigate issues resolved against them in a prior prosecution arising from the same offense (see, People v Goodman, 69 NY2d, at 37, supra; Ashe v Swenson, 397 US, at 445-446, supra). The case before us — involving robberies of different individuals at different times and places — does not present that situation. But the doctrine has a broader foundation and scope, resting on independent common-law considerations (see, People v Berkowitz, 50 NY2d, at 343, supra; People ex rel. Dowdy v Smith, 48 NY2d 477, 482-484; see generally, Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv L Rev 1, 29 [1960]). Thus, even where a defendant is being tried for an offense unrelated to the one for which he was earlier prosecuted, collateral estoppel may preclude relitigation of factual issues previously resolved in his favor.
How far the doctrine of collateral estoppel extends to bar relitigation of facts in a different prosecution is the central issue on this appeal. As we have several times recognized, for policy reasons collateral estoppel is not as liberally applied in criminal prosecutions as in civil actions (see, People v Goodman, 69 NY2d, at 37, supra; People v Plevy, 52 NY2d, at 64, supra; People v Berkowitz, 50 NY2d, at 344-346, supra; People v Reisman, 29 NY2d 278, 285). Emphasizing this distinction, and relying on the fact that both Goodman and Ashe expressly cast their discussion of collateral estoppel in terms of "ultimate” facts, the People insist that collateral estoppel must be limited to ultimate facts, and that the facts at issue *486 here being only evidentiary facts, they were properly relitigated in the second trial.
For purposes of the present analysis, whether facts are evidentiary or ultimate is determined by reference to the second trial (People v Goodman, 69 NY2d, at 38, supra).[2] Facts that are essential to conviction in the second trial — in this case, for example, defendant’s presence at Nello’s house at the critical time — are considered the ultimate facts. The factual issues concerning defendant’s presence at the gas station, in a brown Chevrolet, with a knife-wielding companion, while extensively litigated at defendant’s first trial, were not the sine qua non of his conviction at the second trial. Theoretically, the People could have proved that defendant robbed Nello without establishing that moments earlier he had been at a gas station several blocks away, in a brown Chevrolet, with a knife-wielding companion. These issues, therefore, were not issues of ultimate fact. They were, however, relevant to the issue presented at the Nello trial in that proof that defendant was in the immediate vicinity of the alleged robbery tended to support the People’s theory that defendant was responsible for the crime. They were, therefore, issues of evidentiary fact at the second trial.
While Goodman and Ashe both describe collateral estoppel in terms of ultimate facts, neither can be read to so restrict the doctrine. Neither decision required going beyond the ultimate facts; as we stated in Goodman, even adoption of the evidentiary fact rule in that case would not have changed the result reached (69 NY2d, at 40, 41, supra). Moreover, such a limitation would be inconsistent with the rationale for the doctrine as articulated in both decisions.
We perceive no meaningful difference in the unfairness to which a defendant is subjected when the State attempts to prove his guilt by relitigating a settled fact issue, once necessarily decided in his favor, whether it is a question of ultimate fact or evidentiary fact. "In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend *487 again against charges or factual allegations which he overcame in the earlier trial.” (Wingate v Wainwright, 464 F2d 209, 213-214; see, United States v Keller, 624 F2d 1154, 1158; United States v Mespoulede, 597 F2d 329, 334-335.)
Thus, we conclude that collateral estoppel, in principle, can bar relitigation of evidentiary, as well as ultimate, facts.
Application of Principles to the Facts Presented
The governing principles are more easily articulated than applied, because the precise factual issues encompassed by a general verdict and judgment of acquittal are most often unknown (see, United States v Mock, 604 F2d 341). Defendant’s burden to show that the jury’s verdict in the prior trial necessarily decided a particular factual issue raised in the second prosecution is a heavy one indeed, and as a practical matter severely circumscribes the availability of collateral estoppel in criminal prosecutions. As we recognized in People v Berkowitz (50 NY2d, at 346, supra), "it will normally be impossible to ascertain the exact import of a verdict of acquittal in a criminal trial.” (Emphasis added.) So as not to add even further to defendant’s already formidable burden, and so as to serve the underlying purposes of the collateral estoppel doctrine, courts considering such claims must give a practical, rational reading to the record of the first trial. "The rule is not to be applied with a hypertechnical approach but with realism and rationality by examining all parts of the record of the prior proceeding and concluding from it whether a rational jury could have grounded its decision on an issue other than that which the defendant seeks to foreclose from consideration” (People v Goodman, 69 NY2d, at 40, supra).
Here, the pleadings, evidence, charge and other relevant matter in the Jakiela robbery trial leave no doubt that the verdict of acquittal necessarily decided that defendant and Jakiela encountered each other in the park (as related by defendant), not at the gas station (as related by Jakiela). The jury was asked to determine a single question, of the "starkest simplicity” (United States v Kramer, 289 F2d 909, 914): did defendant, accompanied by a knife-wielding companion, rob Jakiela at the gas station, or did defendant reject his sexual proposition in LaSalle Park? "Unlike many other criminal cases, this one was devoid of alternative possibilities” (id.).
Both the People and the defendant posited the case as an *488 all-or-nothing proposition. Defense counsel attacked Jakiela’s credibility, isolating incongruities and inconsistencies in his testimony as evidence that his entire testimony should be rejected as a vindictive fabrication. He did not challenge Jakiela’s ability to identify defendant; to the contrary, he stressed that the lighting conditions at the gas station were so good that no sober individual would have conducted himself as Jakiela described. Nor did defense counsel contend that the People had failed to prove any particular element of the crimes. As the prosecution noted, "if Mr. Jakiela’s testimony is to be believed, the Defendant is guilty, [his counsel] makes no bones about that”. The jury’s verdict necessarily established that Jakiela’s version of the encounter was the incredible one.
As in every human situation, it is possible to conjure up alternative hypotheses. However, it is not the court’s role to search out conceivable hypotheses for a jury’s verdict, but rather to read the record with realism and rationality. The People argue, for example, that the first jury might in fact have found that defendant and a knife-wielding companion were present at the gas station but did not commit a robbery. But there is no rational basis in the record for such a conclusion; neither party urged it at trial. Moreover, we "must also presume that the jury appropriately applied the charged substantive and procedural rules of law to the determined events” (People v Goodman, 69 NY2d, at 41, supra). If the jury had concluded that defendant and a knife-wielding companion were at the gas station, but did not rob Jakiela, it still would have convicted defendant of criminal possession of a weapon, on the theory of constructive possession charged by the trial court. The jury’s acquittal on this count of the indictment necessarily eliminates the proffered hypothesis. Nor can we accept the Appellate Division majority’s hypothesis that the jury might simply have concluded that no robbery occurred, never reaching the question whether defendant was present at the gas station. Again, there is no rational basis in the record for such a conclusion; the same evidence that would have convinced the jury that no robbery occurred would have led it to the inseparable conclusion that defendant was not present at the gas station. Thus, by acquitting defendant on both counts of the indictment, the jury necessarily concluded that Jakiela’s testimony was incredible, and that defendant was not present at the gas station with a knife-wielding companion.
*489 Collateral estoppel therefore foreclosed relitigation of those issues of evidentiary fact at defendant’s second trial, and it was error to allow the testimony over defendant’s objection.
Finally — given Nello’s vision, the prosecution’s heavy reliance on Jakiela’s testimony in its summation, and the fact that the jury shortly before its verdict was announced asked to rehear that testimony — we reject the People’s contention that the error was harmless.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
Order reversed, etc.

.Whether facts are "evidentiary” or "ultimate”, for purposes of the present analysis, is determined by reference to the second trial. Only facts that are essential to the second judgment are considered "ultimate” facts.

. To be distinguished are the "evidentiary facts” discussed in Hinchey v Sellers (7 NY2d 287, 293) and People ex rel. McCanliss v McCanliss (255 NY 456, 460), meaning facts not essential to the first judgment. (See, People v Goodman, 69 NY2d 32, 47 [Meyer, J., dissenting].)