*1050 OPINION OF THE COURT
James P. Griffin, J.
Defendant Brian Confoy was arrested in the early morning hours of October 19, 1986 and charged in The Bronx in the instant case with driving under the influence of alcohol in violation of section 1192 (2) and (3) of the Vehicle and Traffic Law. Having been tried and convicted in New York County of criminally negligent homicide (Penal Law § 125.10) and leaving the scene of an accident without reporting (Vehicle and Traffic Law § 600) based on an incident which had occurred earlier in the morning of October 19, 1986, defendant now moves for an order, pursuant to CPL article 40, dismissing this accusatory instrument on the ground that this prosecution would violate his right to be free from successive prosecutions for offenses arising from the same transaction. Was the incident in New York County and the incident in Bronx County all part of a single criminal transaction?
FACTS
(a)
On the evening of October 18, 1986, defendant Brian Confoy got together with some friends and relatives at Runyon’s Bar in Manhattan to watch on television the Mets playing in the first game of the World Series. Defendant and the others drank beer at Runyon’s and later the group moved on to another bar, Murphy’s. Defendant left Murphy’s at 3:00 a.m. Shortly thereafter, at about 3:15 a.m., defendant’s car ran down and killed a pedestrian, 17-year-old Courtney Steel, on York Avenue between 83rd and 84th Streets in Manhattan and then left the scene without stopping.
Approximately 1 hour and 15 minutes later, at about 4:30 a.m., defendant’s damaged, parked car was observed alongside the Henry Hudson Parkway in Riverdale by three young people who stopped their own car to see if there had been an accident. They found defendant slumped in the driver’s seat of his car and took him to a police station. They were told to return to the place where defendant’s vehicle was parked.
Two police officers went to that scene and at that time defendant was taken into custody. At approximately 7:20 a.m., defendant, who had already made certain incriminating statements about the incident in Manhattan, took a breathalyzer test which, according to the police report, showed a .14% blood alcohol result.
*1051 (b)
By an accusatory instrument filed on October 19, 1986, the instant action was commenced against defendant in Bronx County Criminal Court; the instrument charged defendant with driving while intoxicated, pursuant to section 1192 (2) and (3) of the Vehicle and Traffic Law. The scene of the offense was alleged to be "Henry Hudson Pkwy Southbound 1/4 Mi (N) B-way Bx, NY”.
On that same day, defendant was also arrested for the hit- and-run killing of Courtney Steel. Subsequently, the New York County Grand Jury returned an indictment charging defendant with murder in the second degree (Penal Law § 125.25 [2] — reckless/depraved), manslaughter in the second degree (Penal Law § 125.15 [1]), and leaving the scene of an accident without reporting (Vehicle Traffic Law § 600 [2]).[1]
(c)
The Manhattan case has been resolved. Defendant was tried in Supreme Court, New York County, during June and July 1987. At the trial, the prosecution sought permission to submit into evidence the results of the breathalyzer test administered in The Bronx. The following discussion took place with respect to that issue:
"the court: Is the issue whether or not the breathalyzer test can go into evidence on the question of relevance?
"Is that going to be the issue?
"mr. lankler [defense counsel]: I said that I had two objections to the breathalyzer testimony.
"One is that absent a showing or proof that from the time of the impact or the time when he is either tested or going back he is under observation so somebody can say he didn’t have a drink, that that gap there is a fatal gap. Who knows what may have happened after the impact * * *
"mr. lankler: * * * [t]he fact of the matter is that there is a significant gap or hiatus”.
The court accepted this argument that the breathalyzer result was irrelevant since defendant could have had more to *1052 drink between the time of the tragedy on York Avenue and the discovery of Mr. Confoy in The Bronx. Based specifically on that, the court refused to allow the prosecutor to present any evidence of The Bronx breathalyzer result.[2] The court stated, inter alia,
"Admittedly there was no evidence as to whether or not the defendant was — with liquor after the impact and before he was first come upon by McGowan and the two others which would at least would be for an hour and at the most it may be two hours * * *
"You have no observation for an hour or two before he is come upon by the good Samaritans * * *
"It won’t make any difference if it was an hour. You could drink a bottle of liquor in an hour * * *
"What if he drank just fifteen minutes before he was came upon?”
Defendant was convicted of criminally negligent homicide (Penal Law § 125.10) and leaving the scene of an accident without reporting (Vehicle and Traffic Law § 600 [2]), both E felonies. On September 9, 1987, Mr. Confoy was sentenced to two indeterminate terms of from 116 to 4 years’ imprisonment, to be served consecutively.
(d)
Now that the Manhattan matter has been concluded, defen *1053 dant has moved to dismiss the instant prosecution for driving while intoxicated in Bronx County based solely on the statutory mandate against double jeopardy.
ANALYSIS
CPL 40.20 (2) specifically provides that: "[A] person may not be separately prosecuted for two offenses based upon the same act or criminal transaction”. Absent the statutory exceptions, no matter the number of crimes technically committed, or the number of jurisdictions involved, an accused is not to suffer repeated prosecution for the same general conduct. (People v Abbamonte, 43 NY2d 74, 81-82 [1977]; see, Matter of Abraham v Justices of N. Y. Supreme Ct., 37 NY2d 560, 565 [1975].) Indeed, even where the offense charged in the later prosecution was not, but could have been, alleged and proved in the prior prosecution, the subsequent prosecution offends this statutory mandate. (People v Abbamonte, supra.)
The initial inquiry, then, in any double jeopardy analysis based upon CPL 40.20 must be whether a later prosecution of a defendant and a prior prosecution are based upon the "same act or criminal transaction”. CPL 40.10 (2) defines "criminal transaction” as "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.”
Defendant argues, despite the fact that the tragedy in Manhattan had occurred more than one hour before defendant was found in The Bronx, that the two events were, in fact, one continuing criminal transaction. In support of that argument, defendant relies upon, inter alia, the following cases: Brown v Ohio (432 US 161, 169 [1977] [defendant who stole a car could not be prosecuted for two different counts of "joyriding”, based on separate incidents of his joyriding that were nine days apart, because the extended, nine-day joyride was but a single, continuing crime]); Matter of Johnson v Morgenthau (69 NY2d 148 [1987] [defendant who was convicted of possessing a weapon in Bronx County on Feb. 5 could not be prosecuted for possessing the same weapon in New York County on Feb. 11, since the possession, occurring in at least two counties over six days was, for double jeopardy *1054 purposes, a single, continuing crime]); People v Grant (116 AD2d 773, 774 [3d Dept 1986] [defendant could not be charged with promoting prostitution in Schenectady County concerning the same person for whom he had been convicted of promoting prostitution in Albany County during an overlapping time period]); Matter of Barber v Plumadore (86 AD2d 710 [3d Dept 1982] [defendant could not be prosecuted for a conspiracy to hunt deer illegally that was formed in Essex County, after he was convicted of hunting the same deer illegally in Steuben County]).
Distinctions may be drawn, however, between those cases and the instant matter. Each of the above cases involved obviously one ongoing criminal act, one continuing criminal purpose or objective. Indeed, as to possessory crime — such as those charged in Brown (supra) and Johnson (supra) — the Legislature has defined those offenses in terms only of "dominion” and "control” (Penal Law § 10.00 [8]); the time span is irrelevant. And even there, when a defendant abandons the illegally possessed property and subsequently recovers it (see, Matter of Pemberton v Turner, 124 AD2d 338 [3d Dept 1986], appeal dismissed 69 NY2d 822 [1987], and cf., United States v Hairrell, 521 F2d 1264 [6th Cir 1975], cert denied 423 US 1035 [1975]), the claim that the events are one continuous wrong is rebuttable and, if rebutted, requires denial of a defense motion to dismiss based upon CPL 40.20. (See, Matter of Johnson v Morgenthau, supra, 69 NY2d 148, 151-152 [1987].)
As to the offense charged in the instant case — driving while intoxicated — the passage of time may negate a claim of "one continuing wrong”. Defense counsel properly conceded at oral argument that had there been a gap of 24 hours between the incident in Manhattan and the discovery of Mr. Confoy in The Bronx, the two would not be part of the same criminal transaction. Over a span of time the level of an individual’s intoxication naturally decreases — unless, like the person who abandons an illegally possessed weapon and subsequently recovers it, the individual recommits the crime by drinking again to excess.
In the instant case the time gap was not 24 hours but only slightly over one hour. Is that gap so significant that the events should be considered two separate criminal transactions? In that regard, the fact that defense counsel successfully moved at the Manhattan trial to preclude evidence of the Bronx breathalyzer result must be given due weight. The foundation for the argument was that these two events had to *1055 be considered separate because, since it was impossible to show that defendant had not had anything further to drink after the Manhattan tragedy, the breathalyzer result could not be said to be evidence relevant to defendant’s condition at the time he ran over Courtney Steel. Indeed, under that analysis, even had defendant been charged with driving while intoxicated in Manhattan, the Bronx breathalyzer result would still be irrelevant; the Bronx affair clearly was considered separate and distinct. Having succeeded with that argument in Manhattan, defendant offers no reason in law or logic why that ruling in Manhattan should not apply with equal force in the present litigation. (See, People v Acevedo, 69 NY2d 478 [1987].) The Bronx incident cannot be said to be "either (a) so closely related and connected in point of time and circumstance as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.” (CPL 40.10 [2].)
Since the two events have been found to be separate criminal transactions, there is no need to consider the parties’ other contentions.
While defendant’s motion must be denied, a further comment is warranted. Defense counsel alleges that at the time Mr. Confoy was discovered by the three young people he was slumped behind the wheel of his car with the ignition off. If that is the case, the prosecutor will have a significant problem of proof at trial in establishing that defendant’s condition at the time he was discovered was not the product of alcohol consumed after defendant turned off the ignition. This, coupled with the fact that, even if convicted, any sentence imposed would appear to merge as a matter of law with the prior indeterminate sentence (see, Penal Law § 70.35), may render the instant prosecution an exercise in futility.
CONCLUSION
The motion is denied.

. Apparently the original felony complaint filed in New York County Criminal Court accused defendant of manslaughter in the second degree, leaving the scene of an accident without reporting, and driving while intoxicated (Vehicle and Traffic Law § 1192 [2] — based on the breathalyzer result).

. While the same analysis, perhaps, would have convinced the trial court to exclude evidence of defendant’s appearance and manner when he was discovered in The Bronx, defense counsel apparently had no objection to such testimony. He stated:
"me. lankler: * * * I don’t think we can keep piling inferences one upon the other and Judge, you know the fact that there is a strong odor of alcohol it cuts both ways, doesn’t it? Carcher is an experienced sergeant. He was specifically asked during the hearing whether he inquired as to how Confoy got here, where Confoy had been and so there is no evidence of that. It is specific that it was left out and there is a big difference between these civilians, McGowan and the two girls being permitted to testify that when they get there they observed certain things. They smelled certain things.
”That is a lot more accurate evidence I think in my opinion than some breathalyzer test given at 7:15 to 7:30 in the morning where the clear inference is supposed to be not even what the condition was at the time these civilians found this man. That is not even that. They can testify to that.
"It is the inference that they want drawn what his condition was at the time he hit the girl and I submit, your Honor, as I have that that is irrelevant. It should not be admitted.” (Emphasis supplied.)