OPINION OF THE COURT
Dominic R. Massaro, J.
Four charges faced Vincent Redd under indictment No. 7813/91: two counts of murder in the second degree, these being, intentional murder (Penal Law § 125.25 [1]) and reckless murder (Penal Law § 125.25 [2]); manslaughter in the second degree (Penal Law § 125.15 [1]); and reckless endangerment in the first degree (Penal Law § 120.25). Following trial by jury, Mr. Redd was acquitted on all counts of said indictment — save for reckless endangerment. The jury was unable to reach a verdict on this remaining count despite three days of deliberation. The People have now announced their intention to prosecute defendant again for the crime of reckless endangerment in the first degree (Penal Law § 120.25).
By this posttrial motion, Mr. Redd seeks to bar any new trial. He bases his objection on the doctrine of collateral estoppel. In the alternative, should reprosecution commence, he seeks to preclude the introduction against him of evidence pertaining to the death of the victim in the concluded trial, one Johnny Turner. For the reasons set forth herein, the requested preclusionary relief is denied in part and granted in part.
*776 THE FACTS
The facts are succinct. Just past midnight, on the evening of September 22, 1991, defendant and three companions, in possession of a newly acquired rifle, proceeded to the rooftop of 1420 Washington Avenue. From this vantage point, the rifle was fired several times at pedestrians. As a result of these discharges, Johnny Turner was randomly shot and killed as he walked on a public street 17 stories below. During the trial, testimony was given by the three individuals also present on the rooftop that fateful night with Mr. Redd. They claimed that only Mr. Redd fired the rifle aimed at the street, and that he continued to fire after Mr. Turner fell. This was uncontroverted. Although the rifle first was fired by another party, according to the witnesses’ testimony, these shots were aimed into the air. On this point, the People called an expert; despite rigorous cross-examination, he opined that only bullets fired in a trajectory toward the street could possibly have struck and killed the victim.

Collateral Estoppel Analysis

Although the doctrine of collateral estoppel originally developed in connection with civil litigation, it has long been applied in matters criminal (see, People v Rogers, 102 Misc 437 [1918], affd 184 App Div 461 [1918], affd 226 NY 671 [1919]; see also, People v Sailor, 65 NY2d 224 [1985]; People v Plevy, 52 NY2d 58 [1980]; People v Berkowitz, 50 NY2d 333 [1980]; Matter of McGrath v Gold, 36 NY2d 406 [1975]). Our Court of Appeals has otherwise held that a verdict favorable to the defendant in a former prosecution operates as a complete bar to any subsequent prosecution involving the same issue; this even though a second indictment may charge a different crime (see, People v Goodman, 69 NY2d 32 [1986]; see also, United States v Keller, 624 F2d 1154 [3d Cir 1980]; United States v Mespoulede, 597 F2d 329 [2d Cir 1979]; United States v Seijo, 537 F2d 694 [2d Cir 1976]).
The nub of collateral estoppel is to extend res judicata beyond those cases where a prior judgment serves as a complete bar to any further proceeding. And defendant here seeks to apply it expansively to preclude further prosecution of a factual issue — as opposed to a final judgmental verdict — he contends was considered by a jury. To allow otherwise, he maintains, would subject him to double jeopardy.
Ashe v Swenson (397 US 436, 443 [1970]) assigns the doctrine of collateral estoppel to that of constitutional dimension *777 embodied in Fifth Amendment guarantees. Put simply: "once an issue of ultimate fact has been decided by a valid judgment, the same parties cannot again relitigate that issue”. Thus, the doctrine is particularly applicable to successive criminal prosecutions involving essential elements of a crime conclusively adjudicated in the former prosecution (see, People v Lo Cicero, 14 NY2d 374 [1964]). Such ultimate facts are necessarily determinative; their absence are the sine qua non of a conviction in a second trial. But it is a defendant who must carry the heavy burden of proving that the fact finder resolved in his favor the very issue that he seeks to foreclose from further consideration (see, United States v Mespoulede, supra; United States v Gugliaro, 501 F2d 68 [2d Cir 1974]; United States v Tramunti, 500 F2d 1334 [2d Cir 1974], cert denied 419 US 1079 [1974]).
Given this framework, the application of collateral estoppel involves two steps. First, a court must determine from an examination of the entire record what the first trial adduced by way of factual findings. Second, the court must then examine how that issue determination bears upon the prosecution of a second trial (see, United States v Mespoulede, supra; United States v Kramer, 289 F2d 909 [2d Cir 1961]; People v Trudeau, 40 Misc 2d 854 [Onondaga County 1963]).
In the concluded case, after hearing the evidence presented, the jury, as the trier of fact, acquitted defendant of all three homicide charges. The common element shared by these crimes is that the defendant’s act caused the death of Johnny Turner (see, Penal Law § 125.25 [1], [2]; § 125.15 [1]). Having scrutinized these crimes in this respect, the court notes that the charge of murder in the second degree (Penal Law § 125.25 [2]), that is, reckless murder, is almost identical to the charge now being sought to be retried, reckless endangerment in the first degree (Penal Law § 120.25). This except for a sole distinguishing factor: the former crime contains the element of defendant’s act bearing on the outcome, that is, as "the cause of death”. In the latter crime, the fact of death is not an intrinsic element for consideration; rather, the issue is whether Mr. Redd engaged in "reckless endangerment * * * under circumstances evincing] a depraved indifference to human life.” The statutory provisions defining these offenses have been designed by our Legislature to prohibit very different kinds of criminal conduct (see generally, CPL 40.10 et seq.). The question to be presented centers not at all on the outcome of any conduct by Mr. Redd, but on the element of risk produced by such conduct. It cannot be said that this has been adjudicated with finality.
*778 The jury, without the causation of death element, was on this record unable to come to an objective assessment of the degree of risk presented by defendant’s indiscriminate conduct. The distinction is a telling one in determining what the first jury actually decided for purposes of the within prayer. Clearly, it is impossible to devine without conjecture any qualitative judgment by the trier of fact vis-a-vis the distinguishing element required for depraved indifference recklessness.

Double Jeopardy Considerations

The collateral estoppel doctrine, ipso jure, acts through the Double Jeopardy Clause in criminal cases to preclude a defendant from having to relitigate, and thereby occasion himself again at risk, over an issue that has been resolved in his favor in a prior trial (see, United States v Dixon, 509 US 688 [1993]; Illinois v Vitale, 447 US 410 [1980]; Blockburger v United States, 284 US 299 [1932]; see also, Brown v Ohio, 432 US 161 [1977]; Kepner v United States, 195 US 100 [1904]); unlike the requirement of identity of offenses as giving rise to double jeopardy, however, collateral estoppel is broader. It applies to questions that actually were in issue and actually determined by a first jury in reaching its verdict. Although double jeopardy necessarily includes collateral estoppel, it cannot be said that collateral estoppel equates with or includes double jeopardy. It is without cavil that double jeopardy prohibitions are not otherwise engaged by collateral estoppel which, if applied, merely restrict proof, but does not make conviction impossible. A demonstration by a defendant that the prior jury reasonably could not have grounded its verdict upon an issue other than that which he later seeks to foreclose from consideration is controlling (see, United States v Jacobson, 547 F2d 21 [2d Cir 1976]). Notwithstanding, the admonition contained in Ashe (supra) is that a court "should not strain to dream up hyper-technical and unrealistic grounds on which the previous verdict might conceivably have rested” (547 F2d, at 23, supra). There is clearly a "substantial possibility that the first jury did not actually decide the issue on which estoppel is being sought” (United States v Jacobson, supra, at 23; see also, People v Goodman, supra).
As set forth in People v Acevedo (69 NY2d 478, 488 [1987], quoting People v Goodman, supra, at 41), the Court presumes that " 'the jury appropriately applied the charged substantive and procedural rules of law to the determined events’ ”. A rational reading of the within record finds that the first jury *779 "merely”, but nonetheless decisively, determined there was a reasonable doubt as to whether the shots fired from the rooftop that killed Johnny Turner were in fact fired by Vincent Redd. The jury did not necessarily conclude that Mr. Redd fired no shots, as argued by the defense. Nor is there a rational basis in the record for such a conclusion. It must be remembered that the jury need only to have had a reasonable doubt as to any one of the five elements of the crime of manslaughter charged here in order to render an acquittal.

Retrial Preclusion Denied

Goodman (69 NY2d, supra, at 38) tells us that several factors are required to be present before collateral estoppel may be applied: "an identity of parties * * * 'a full and fair opportunity’ [by the party opposing estoppel] to litigate * * * and a prior proceeding resulting in a final and valid judgment.” Respecting this last requirement, Mr, Redd fails to carry his burden — on the reckless endangerment charge being sought to be retried, that is, on the underlying issue of "reckless endangerment * * * under circumstances evinc[ing] a depraved indifference to human life”, the jury deadlocked. Even an expansive application of the doctrine would not dictate the granting of the requested relief. Defendant’s claim does not invoke double jeopardy and application of collateral estoppel to preclude further prosecution is, in this instance, unwarranted. Retrial, therefore, would not be improper.

Ultimate and Evidentiary Facts Compared

As to the second prong of Mr. Redd’s sought after relief, whether the court should preclude the People from offering any evidence at a subsequent trial pertaining to the death of Johnny Turner, the court does so preclude.
The "ultimate fact” in Mr. Redd’s first trial revolved around the issue of whether or not, by firing a rifle, he caused the death of another person. The jury decided this ultimate fact in defendant’s favor: he did not. Acevedo (69 NY2d 478, supra) serves at this moment to extend the application of collateral estoppel. It sweeps aside for purposes with which we are here concerned the People’s assertion of and reliance on Goodman (supra), that evidence of the death of Johnny Turner is admissible in a second trial because it is relevant to support the renewed reckless endangerment charge by proving not an ultimate fact but an "evidentiary fact”, namely, that defendant engaged in reckless conduct which created a grave risk of death to another person.
*780 In Acevedo (supra), the Court of Appeals found a collateral estoppel bar to the relitigation of issues necessarily decided in the defendant’s favor at a first trial can be a bar to the relitigation of "evidentiary” facts as well as "ultimate” facts. By way of contrast, "evidentiary facts” have been defined as "facts * * * necessary” to prove the "ultimate fact[s]; they are the premises upon which conclusions of ultimate facts are based * * * facts which furnish evidence of existence of some other fact” (Black’s Law Dictionary 500 [5th ed 1979]).
Acevedo (supra, at 486, 487) provides further guidance:
"We perceive no meaningful difference in the unfairness to which a defendant is subjected when the State attempts to prove his guilt by relitigating a settled fact issue, once necessarily decided in his favor, whether it is a question of ultimate fact or evidentiary fact. 'In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial’ (Wingate v Wainwright, 464 F2d 209, 213-214; see, United States v Keller, 624 F2d 1154, 1158; United States v Mespoulede, 597 F2d 329, 334-335).
"Thus, we conclude that collateral estoppel, in principle, can bar relitigation of evidentiary, as well as ultimate, facts.”
It is noteworthy that not only is the death of Johnny Turner not an ultimate fact in a second trial, his death is not an element of the crime upon which the People wish to reprosecute defendant. The People’s argument for its admission as a necessary evidentiary building block to prove their assertion of the ultimate fact that defendant acted with reckless disregard bearing upon the issue of depraved indifference to human life is overstated. Indeed, it is possible to prove reckless endangerment in the first degree (Penal Law § 120.25) without any reference to evidence of the death of Johnny Turner.* Whether Vincent Redd recklessly fired the rifle from an urban rooftop onto a busy boulevard with a depraved indifference to consequences attendant to that act in terms of possible human toll, which caused a grave risk of death to another person has yet to be resolved. It is the risk of injury alone that will sustain *781 prosecution; and a finding on this score would not be inconsistent with his acquittal(s) in the prior trial.

Issue Preclusion Granted

As expressed in Acevedo (supra), then, New York now follows the well-established position of the Federal courts in applying collateral estoppel to bar the government from relitigating a question of fact that was decisively determined in favor of the defendant in a mixed or partial verdict (see also, Green v United States, 426 F2d 661 [DC Cir 1970] [Per Curiam]; Travers v United States, 335 F2d 698 [DC Cir 1964]; United States v Keller, 624 F2d 1154 [3d Cir 1980], supra; United States v Jacobson, 547 F2d 21 [2d Cir 1976], supra; United States v Seijo, 537 F2d 694 [2d Cir 1976], supra; Cosgrove v United States, 224 F2d 146 [9th Cir 1955]). Judge Kaufman of the Court of Appeals, Second Circuit, in Mespoulede (supra, at 335) states it in pithy terminology: ”[T]o put it bluntly, to refuse to allow the assertion of collateral estoppel * * * would simply be inequitable”. Fundamental considerations of fair play would have this court neither place an unjust burden on defendant to require him to defend against an issue actually litigated, and upon which a jury has already decided in his favor, nor subject him to the peril of conviction for a factual allegation which, at trial, he has already been found not culpable.

 In fact, the trial testimony established that any number of persons were also on the street below, each one equally at risk. (See, e.g., People v Schoonmaker, 103 AD2d 936 [3d Dept 1984] [firing gun into occupied household constitutes reckless endangerment].)