OPINION OF THE COURT
Randall T. Eng, J.
Defendant, relying on the doctrine of collateral estoppel, *455 moves to preclude the People from introducing evidence that he used physical force to effect the alleged rape of complainant in this action.
The defendant was indicted, inter alia, for two counts of rape in the first degree, rape by forcible compulsion (Penal Law § 130.35 [1]) and rape of a physically helpless person (Penal Law § 130.35 [2]) arising out of an incident that allegedly occurred on October 15, 1997 at a Queens motel. At the first trial, the jury acquitted defendant of forcible rape, but convicted him of the rape of a physically helpless person. His conviction was subsequently set aside by the Appellate Division, Second Department (267 AD2d 404). The Court of Appeals denied the People’s application for leave. The matter is now before this court for retrial of the physically helpless count.
Defendant seeks to preclude the People from introducing any evidence that he used physical force in connection with the alleged rape of the complainant, arguing that the jury’s acquittal in the first case on the charge of forcible rape bars the People from utilizing evidence relating to force in the present case under the doctrine of collateral estoppel.
I.
Background
The facts presented at trial indicated the following:
The complainant is a woman of Korean ancestry who speaks little English. She met the defendant when she visited the United States in 1995. He was a Deacon at a local Philadelphia church and they struck up an acquaintance. Later, the complainant returned to Korea where she resided with her husband and daughter.
The following year defendant visited Seoul and contacted the complainant, mentioning that his wife was opening a restaurant in Queens, New York. Defendant indicated the complainant might work there. Soon thereafter, the complainant was offered a job and worked as a bookkeeper at the Queens restaurant.
On October 15, 1997, a shareholders’ meeting was held at the restaurant at which time complainant and defendant were present. After this meeting, the defendant told the complainant that her bookkeeping was incomplete and he wanted to discuss this matter with her in a quiet place. She agreed and entered defendant’s car. He drove in Queens for a period of *456 time and entered a parking lot. Both left the car, entered a nearby building and took an elevator upstairs. They left the elevator and entered a hotel room. The complainant pointed out that this was not a restaurant. Defendant said that it was a quiet place and started to discuss restaurant business. This conference lasted about 30 minutes. When it was over, the complainant felt that she should leave and tried to go. Defendant asked her to stay and grabbed her arm. She slapped his face. The defendant pushed her on to a nearby bed, striking her head on the headboard. She protested and tried to flee. They struggled as he pinned her in the bed, then allegedly struck her in the jaw and stomach. She passed out. Later she awoke, realized that she had been sexually assaulted, and fled the hotel room while defendant was taking a shower. The complainant went to the motel personnel who called the police. She was later taken to a nearby hospital.
II.
Criminal Collateral Estoppel
The governing principles in this area were succinctly set forth in People v Acevedo (69 NY2d 478, 484-485), when the Court stated:
“The doctrine of collateral estoppel, or issue preclusion, operates in a criminal prosecution to bar re-litigation of issues necessarily resolved in defendant’s favor at an earlier trial (see, People v Goodman, 69 NY2d 32, 37-38; Ashe v Swenson, 397 US 436, 443). Underlying the doctrine are concerns for conserving the time and resources of courts and litigants, as well as fairness to the defendant. Defendant, having once been acquitted by a jury, should not at a subsequent trial be subjected to the burden of meeting issues that were already necessarily decided in his favor (People v Goodman, 69 NY2d, at 37, supra; People v Berkowitz, 50 NY2d 333, 344; People v Lo Cicero, 14 NY2d 374, 380). By the same token, where the People have had a full and fair opportunity to contest issues, but have failed, it would be inequitable and harrassive to again permit the prosecution to establish these same matters, as if the first trial had never taken place (see, People v Plevy, 52 NY2d 58, 64).”
Thus, the doctrine of collateral estoppel is applicable to criminal proceedings and “means simply that when an issue of *457 ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit” (Ashe v Swenson, 397 US 436, 443). However, while the rule can be succinctly stated, its application is not without difficulty since what constitutes an issue of ultimate fact is not always legally apparent. An ultimate fact is defined as:
“an issue which is the sine qua non of a conviction in the second trial. If the first jury has resolved the issue in defendant’s favor, the effect of that prior determination is to bar prosecution in a second criminal action though the second indictment may charge a different crime” (People v Goodman, 69 NY2d, supra, at 38).
In the present case, we are not dealing with an ultimate fact. The jury in the first trial found the defendant not guilty of forcible rape (Penal Law § 130.35 [1]). Forcible rape requires two elements: sexual intercourse and forcible compulsion. Defendant stipulated that sexual intercourse took place; hence, the jury was faced with one issue — forcible compulsion (Penal Law § 130.00 [8] [a]) — was physical force utilized in this case? The jury acquitted defendant; consequently, physical force was not used.
The second count charged intercourse with one who is incapable of consent by reason of being physically helpless. Since physical force is not an element of this crime, much less a necessary link, it is clearly not an “issue of ultimate fact.”
However, defendant argues that collateral estoppel also applies to evidentiary facts, properly litigated at the first trial. It is his contention that the only issue truly before the jury was the question of whether physical force was used in the case, as evidenced by testimony regarding blows to complainant’s head, jaw and stomach. Defendant maintains that the jury’s verdict logically negated such force and no evidence pertaining to these issues could be introduced at the second trial.
III.
Collateral Estoppel and Evidentiary Facts
In Ashe v Swenson (supra), the Supreme Court ruled that estoppel applied to ultimate facts. That case involved a defendant who was acquitted in a prior trial of robbery involving one of several participants in a poker game. Since there was no dispute that the robbery had occurred, the jury’s verdict neces *458 sarily determined that defendant was not present at the time of the crime. The Supreme Court held that the finding of this ultimate fact foreclosed the government from subsequently trying the earlier acquitted defendant for the robbery of another of the poker players. In the present case, defendant does not contend that the acquittal of forcible rape bars the physically helpless rape, but rather reasons that the first acquittal bars not only the reprosecution of ultimate facts but also prevents the introduction of evidentiary facts necessarily established by the defendant in his earlier trial.
In People v Goodman (69 NY2d, supra, at 40) the Court of Appeals was faced with this expansion of the collateral estoppel rule but, after analysis of both Federal and State law, found “These concerns do not warrant adoption of the evidentiary fact rule in this case, however, for even if we were to do so, its application would not require reversal of defendant’s conviction.” So in the Goodman case (decided Dec. 18, 1986), the Court of Appeals noted that other jurisdictions had extended estoppel to evidentiary facts necessarily established in defendant’s favor in a former trial but refused to apply it in New York under the facts of that case.
This uncertainty was resolved in People v Acevedo (69 NY2d, supra, at 480) when the Court of Appeals was faced with the question of whether the doctrine of collateral estoppel can be applied to issues of “evidentiary” facts, and, if so, what legal principles determined if such fact issues were necessarily established in defendant’s favor at his first trial, so as to preclude their further litigation in defendant’s second trial.
In resolving the initial question the Court started with the basic doctrine set forth in People v Goodman (supra) and Ashe v Swenson (supra), namely that the doctrine of collateral estoppel, or issue preclusion, does apply in criminal matters and bars relitigation of issues necessarily resolved in defendant’s favor at an earlier trial. The Court then considered how far this doctrine extended — did it limit the preclusion only to “ultimate” facts or did it include “evidentiary” facts necessarily decided at the first trial. For the purposes of their analysis, “whether facts are evidentiary or ultimate is determined by reference to the second trial” (People v Acevedo, supra, at 486, citing People v Goodman, 69 NY2d, supra, at 38). The Acevedo Court then determined that there were issues of evidentiary fact in the first trial and they were relevant to the second trial. This leads to the fundamental issue — could the first trial evidentiary facts be used to preclude issues at the second trial?
*459 The Court (People v Acevedo, 69 NY2d, supra, at 486-487) determined this question in the affirmative, reasoning as follows:
“While Goodman and Ashe both describe collateral estoppel in terms of ultimate facts, neither can be read to so restrict the doctrine. Neithér decision required going beyond the ultimate facts; as we stated in Goodman, even adoption of the evidentiary fact rule in that case would not have changed the result reached (69 NY2d, at 40, 41, supra). Moreover, such a limitation would be inconsistent with the rationale for the doctrine as articulated in both decisions.
“We perceive no meaningful difference in the unfairness to which a defendant is subjected when the State attempts to prove his guilt by relitigating a settled fact issue, once necessarily decided in his favor, whether it is a question of ultimate fact or evidentiary fact. Tn both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial.’ (Wingate v Wainwright, 464 F2d 209, 213-214; see, United States v Keller, 624 F2d 1154, 1158; United States v Mespoulede, 597 F2d 329, 334-335.)
“Thus, we conclude that collateral estoppel, in principle, can bar relitigation of evidentiary, as well as ultimate, facts.”
IV.
Collateral Estoppel Applied to Evidentiary Facts
This leads to the second issue considered in People v Acevedo (supra), namely what principles govern the application of collateral estoppel in regard to evidentiary facts?
The Acevedo Court initially noted that defendant bears the burden of showing that the jury’s verdict in the prior trial necessarily decided a particular factual issue raised in the second prosecution. However, “ ‘it will normally be impossible to ascertain the exact import of a verdict of acquittal in a criminal trial’ ” (People v Acevedo, supra, at 487, quoting People v *460 Berkowitz, 50 NY2d 333, 346, supra). But “as not to add even further to defendant’s already formidable burden, and so as to serve the underlying purposes of the collateral estoppel doctrine, courts considering such claims must give a practical, rational reading to the record of the first trial” (People v Acevedo, supra, at 487). In this regard, the Court of Appeals quoted People v Goodman (69 NY2d, supra, at 40):
“ ‘The rule is not to be applied with a hypertechnical approach but with realism and rationality by examining all parts of the record of the prior proceeding and concluding from it whether a rational jury could have grounded its decision on an issue other than that which the defendant seeks to foreclose from consideration’ ” (People v Acevedo, supra, at 487).
To summarize, the doctrine of collateral estoppel applies to criminal matters and may bar the relitigation of both ultimate and evidentiary facts. The burden is on the defendant to establish that the doctrine applies. Normally this is accomplished by showing that the jury’s prior verdict necessarily decided a factual issue raised in the second prosecution.
V.
Application to the Present Case
In the instant matter, defendant points out that he was acquitted of rape by forcible compulsion. Since defendant stipulated that sexual intercourse did take place, the issue of force was the major question before the jury. Consequently, defendant reasons that any evidence tending to establish physical force should be precluded in the second trial.
The People reject defendant’s interpretation of the jury verdict and maintain that a rational view of such verdict does not bar the jury from concluding that defendant used physical force to render the victim unconscious, and once in that state engaged in sexual intercourse with her.
Basically, the prosecution reasons that the jury verdict simply means that force was not the immediate cause of the rape as force was not necessary once the victim was unconscious. It was this state of unconsciousness, and not the force, which formed the basis of the jury’s finding of guilt as to the physically helpless second count.
In considering the People’s argument, the court notes that in People v Bowles (97 AD2d 886), the Appellate Division affirmed *461 a forcible compulsion conviction where the defendant had intercourse with the victim after beating her unconscious. A second relevant case is People v Haims (171 AD2d 878) in which the Second Department observed that defendant confessed to a fantasy involving sexual intercourse with the victim. He approached the victim to assault her while she was taking a shower and struck her repeatedly over the head with a club, causing her injuries which led to her death. The Appellate Division affirmed the attempted forcible rape conviction, even though any act of intercourse would have had to be on an unconscious victim.
Thus, evaluating the jury’s verdict with “realism and rationality,” this court can only conclude that it found, despite evidence to the contrary, that defendant was not guilty of forcible compulsion and that the jury appropriately applied the charged substantive and procedural rules of law to the determined events (People v Goodman, 69 NY2d, supra, at 40). Therefore, the jury’s verdict necessarily decided the issue of force — namely that it did not exist. Any other inference would have required a finding of guilt.
The People further argue that evidence of force should be admitted, not to prejudice defendant, but as logical background material to establish why complainant was “physically helpless” at the time of the incident.
They maintain that the defendant’s initial physical actions are necessary to establish a coherent narrative which would enable the jury to fully understand the present “physically helpless” count. The prosecution, thus, reasons that barring such evidence would result in an important and unnecessary omission at the second trial.
While the absence of such evidence may leave a void in the People’s present case, it must be kept in mind that collateral estoppel deals with evidentiary facts necessarily settled in defendant’s favor. Even if the relief the defendant seeks may negatively influence the prosecution’s trial strategy by removing a link in the chain of evidence, the District Attorney is free to use alternate theories to cover any such omission. In this connection, the trial record indicates that the People advanced a further theory of “disassociation” to explain the complainant’s physically helpless condition and so could utilize this mental state at a second trial. However, as was commented on in Pugliese v Perrin (731 F2d 85, 89), whatever theory of criminality the People employ to advance their case at a second trial, any “evidentiary gap could not be plugged by proof * * * which *462 could only be the basis for a conviction * * * of which [defendant] had already been acquitted.” This applies to the present matter and the court finds no merit in the People’s alternate theory of using prior evidentiary facts solely for narrative or background purposes when such facts necessarily form the basis of an earlier trial acquittal.
In conclusion, the court finds that the defendant has run the evidentiary gauntlet as regards forcible rape in his first trial and has been acquitted of that charge. The issue of force has been decided in his favor; neither law nor logic requires a re-litigation of identical evidentiary issues previously raised and conclusively settled at a prior trial (see, People v Acevedo, 69 NY2d 478, supra; People v Redd, 167 Misc 2d 774, 781).
Based on the above, defendant’s application to preclude the People from offering evidence that he used force in committing the alleged rape in this case is granted.
The precise language limitations to be placed upon the People’s proof will be determined by the court on the record prior to the commencement of jury selection in the retrial of this indictment.