OPINION OF THE COURT
 

 Wesley, J.
 

 This case calls upon us to examine whether a defendant’s right to effective assistance of counsel is compromised when defense counsel stipulates to facts directly contradicting defense witnesses’ statements.
 

 Defendant was indicted for murder in the second degree and related offenses stemming from a killing in Bronx County during the afternoon of June 22, 1994. At trial, two eyewitnesses testified to having observed defendant shoot the victim from point-blank range. One indicated that defendant had black
 
 *136
 
 hair and distinctive green eyes. The other surmised that the murder was motivated by a drug turf dispute. Decedent’s brother also testified to defendant’s motivation for the shooting and described defendant’s unique green eyes and black hair.
 

 Defense counsel pursued a misidentification defense. In her opening statement, she indicated that “there might be possible discrepancies in identification” and “what the [shooter] looked like.” Because a misidentification defense also might imply an alibi for defendant, the prosecutor noted prior to the defense case that no alibi notice had been filed as required by CPL 250.20, and sought confirmation that no alibi defense would be offered. Defense counsel told the court that none of the witnesses or defendant knew their whereabouts at the time of the shooting, and that their testimony would be offered only to establish that defendant’s hair was a distinctive yellow-orange color at the time of the shooting.
 

 To establish his defense, defendant called Vivian Rivera, who testified that defendant’s hair had been dyed yellow-orange since 1992 and that defendant, who lived in Massachusetts, had been at her home in the Bronx several days before the shooting with his girlfriend, Iris Santiago. Santiago then testified to defendant’s yellow-orange hair color, and further indicated that around June 20 — two days before the murder— she and defendant traveled to Philadelphia for the birthday party of his sister, Anna Torres.
 

 At the close of Santiago’s direct testimony, the court announced at a bench conference that there was a “problem” because Santiago’s testimony suggested an alibi. The court and counsel discussed possible remedies, and the court reserved decision on what to do. Santiago on cross testified that she and defendant left Massachusetts around June 20th, spent about an hour in New York and then traveled to Philadelphia where they remained until after June 24, 1994 — Torres’ birthday. Faced with this unnoticed alibi testimony, the court asked counsel for suggestions on how to proceed. Defense counsel reiterated that none of the defense witnesses had previously been able to recall their whereabouts on June 22, 1994 — the day of the shooting.
 

 The next day the People requested that Santiago’s testimony be allowed to stand, indicating that the prosecution would inquire when Santiago had first related where she was with defendant on the day of the shooting
 
 (see generally People v Dawson,
 
 50 NY2d 311 [1980]). The People also asked that if
 
 *137
 
 Torres testified, she be precluded from offering any testimony about an alibi. The court indicated that Torres could testify about defendant’s hair color at the time of the shooting, but expressed concern that her testimony was “inextricably interwoven” with defendant’s presence in Philadelphia. Realizing that any limitation of Torres’ testimony also might limit cross-examination, the prosecution withdrew its preclusion request.
 

 The court then inquired of defense counsel why Santiago and Torres may have failed to disclose their exculpatory information prior to trial. Counsel indicated that neither she nor any other attorney had encouraged their silence in this regard, and reiterated that the witnesses had previously been unable to pinpoint defendant’s whereabouts on the day of the shooting. The court expressed concern that defense counsel might be called as a witness and noted that “it is not desirable that [defense counsel] be called * * * to impeach one of the defense witnesses.” Defense counsel agreed and indicated that she might be willing to stipulate that the witnesses had not told her. of the alibi information prior to trial.
 

 When the trial resumed, Santiago testified on cross-examination that she had told defense counsel she was with defendant in Philadelphia on the day of the shooting. Torres, who testified next, similarly stated that defendant was with her in Philadelphia from June 20 through June 25 and that she had previously related that fact to defense counsel. Defendant testified that he had yellow-orange hair at the time of the shooting and that he was in Philadelphia from June 20 to June 25 to celebrate his sister’s birthday — information that he recalled for the first time at trial after hearing the testimony of Santiago and Torres.
 

 After the defense rested the court and counsel drafted the following stipulation:
 

 “It is stipulated and agreed by [defense counsel] that prior to their appearing in New York to give testimony in this case, Miss Santiago and Miss Torres had spoken with her and that neither Miss Santiago or Miss Torres told [defense counsel] that the defendant Dario Berroa had been in Philadelphia specifically on June 22nd, 1994.”
 

 The court read the stipulation to the jury at the start of the People’s rebuttal case. During summation defense counsel continued to argue to the jury that the only issue in the case
 
 *138
 
 was misidentification. In addressing the alibi testimony and informing the jury of its option to either “disregard” or “look at” the testimony, defense counsel also stated “you heard my stipulation.”
 

 Defendant was found guilty of murder in the second degree and sentenced to 25 years to life imprisonment. The Appellate Division affirmed defendant’s conviction, rejecting his ineffective assistance of counsel claim. One Justice dissented and granted defendant leave to appeal to this Court.
 

 As an initial matter, unlike the majority and the dissent at the Appellate Division, we do not view defense counsel’s revelation of the witnesses’ prior statements to be based on either an overzealous defense of her reputation or the fulfillment of her ethical duties. Before any potential conflict had arisen, and before any defense witnesses had testified, defense counsel initially disclosed the information to explain why no alibi notice had been filed. The attempt to remedy the dilemma that unfolded once the witnesses testified — not defense counsel’s reason for the disclosure — is the appropriate focus of our analysis.
 

 Defendant claims that he was deprived of his constitutional right to conflict-free counsel when his attorney agreed to stipulate that Santiago and Torres had not previously informed her that defendant was in Philadelphia on the day of the shooting. Defendant contends that the stipulation transformed his advocate into an adverse witness whose credibility was pitted against his other witnesses. Under the unusual facts of this case, we agree.
 

 The right to effective assistance of counsel in criminal proceedings is guaranteed by the New York and Federal Constitutions
 
 (see
 
 US Const 6th Amend; NY Const, art I, § 6). Our state standard for effective assistance of counsel “has long been whether the defendant was afforded ‘meaningful representation’”
 
 (People v Henry,
 
 95 NY2d 563, 565 [2000], quoting
 
 People v Benevento,
 
 91 NY2d 708, 712 [1998]). In applying this standard we have emphasized the difference between ineffective representation and losing trial tactics
 
 (see Benevento,
 
 91 NY2d at 712). Indeed, counsel’s performance will not be considered ineffective, even if unsuccessful, as long as it reflects an objectively reasonable and legitimate trial strategy under the circumstances and evidence presented
 
 (see id.
 
 at 712-713;
 
 People v Satterfield,
 
 66 NY2d 796, 799 [1985]). “What constitutes effective assistance of counsel is not and cannot be fixed
 
 *139
 
 with yardstick precision, but varies according to the unique circumstances of each representation”
 
 (People v Baldi,
 
 54 NY2d 137, 146 [1981]).
 

 An ineffective assistance of counsel claim also may be premised on a conflict of interest. The right to effective counsel ensures not only meaningful representation but also the assistance of counsel that is “conflict-free and singlemindedly devoted to the client’s best interests”
 
 (People v Longtin,
 
 92 NY2d 640, 644 [1998],
 
 cert denied
 
 526 US 1114 [1999]; see
 
 also People v Ortiz,
 
 76 NY2d 652, 656 [1990]). That right is impaired when, absent a defendant’s informed consent, defense counsel represents interests which are actually or potentially in conflict with those of the defendant (see
 
 People v McDonald,
 
 68 NY2d 1, 8 [1986]; see
 
 also Longtin,
 
 92 NY2d at 644). Conflicting interests may arise in the simultaneous representation of clients with adverse interests (see
 
 Ortiz,
 
 76 NY2d at 656;
 
 McDonald,
 
 68 NY2d at 9;
 
 People v Mattison,
 
 67 NY2d 462, 468 [1986],
 
 cert denied
 
 479 US 984 [1986]), or in successive representations because of an attorney’s duty to maintain the former client’s confidences even after representation has ceased (see
 
 Longtin,
 
 92 NY2d at 644;
 
 Ortiz,
 
 76 NY2d at 656;
 
 People v Alicea,
 
 61 NY2d 23, 29 [1983];
 
 People v Krausz,
 
 84 NY2d 953 [1994]).
 

 Defense counsel’s stipulation in this case presents a circumstance somewhat different from the simultaneous or successive representations usually associated with conflict of interest analysis. The conflict confronting defense counsel here was not that of competing loyalties to clients past or present. Rather, it arose out of counsel’s efforts, taken on defendant’s behalf, to interview friendly witnesses in preparation for trial, and her knowledge that their testimony at trial deviated from their pretrial statements. Notably, at this point the court did not exclude the putative alibi testimony pursuant to CPL 250.20 (3). Instead, the dilemma presented itself when the court suggested — and counsel did not dispute — that she was the only source who could impeach two of defendant’s key witnesses and thus stood to be called as a witness. In an attempt to avert this prospect, the parties agreed to the stipulation. The use of the stipulation in lieu of her testimony did not cure the conflict as intended; in this case it exacerbated the conflict by eviscerating the credibility of her client’s witnesses and his defense.
 

 A lawyer is ethically required to withdraw from acting as an advocate if it is obvious that he or she “may be called as a witness on a significant issue other than on behalf of the client
 
 *140
 
 * * * [and] it is apparent that the testimony is or may be prejudicial to the client” (Code of Professional Responsibility DR 5-102 [d] [22 NYCRR 1200.21 (d)];
 
 see also People v Paperno,
 
 54 NY2d 294, 299-300 [1981]; Prince, Richardson on Evidence § 6-114, at 324 [Farrell 11th ed]).
 
 [1]
 
 An attorney also should not continue to serve as an advocate when it is obvious that the lawyer will be called as a witness on behalf of the client
 
 (see
 
 DR 5-102 [c] [22 NYCRR 1200.21 (c)]). We acknowledge that the Code provisions concerning matters of professional conduct “cannot be applied as if they were controlling statutory [authority] or decisional law”
 
 (S & S Hotel Ventures Ltd. Partnership v
 
 777
 
 S.H. Corp.,
 
 69 NY2d 437, 443 [1987]), and that not every violation of an ethical rule will constitute ineffective assistance of counsel. However, when a lawyer is called to testify against the client’s interest the conflict is obvious. »
 

 The People contend that decisions from Illinois
 
 (People v Beals,
 
 162 Ill 2d 497, 643 NE2d 789 [1994]) and Connecticut
 
 (State v Crespo,
 
 246 Conn 665, 718 A2d 925 [1998]) and our decision in
 
 People v Baldi
 
 (54 NY2d 137) demonstrate that a testimonial stipulation may constitute a legitimate trial strategy even when the facts stipulated may be prejudicial to the defendant. In
 
 Beals,
 
 the Supreme Court of Illinois approved the use of two trial stipulations by defense counsel that contained facts that were, in the court’s opinion, insignificant or not relevant to the testimony of defendant’s two key witnesses
 
 (see
 
 162 Ill 2d at 505, 643 NE2d at 79S-794).
 
 [2]
 
 As in this case, the stipulated facts arose from prior statements made by the two witnesses to defense counsel, but in
 
 Beals
 
 defendant’s sister was also present when the statements were made and had taken notes of the interviews. In fact, those notes served
 
 *141
 
 as the basis for some of the prosecution’s cross-examination of the witnesses and for the stipulations. Thus, when faced with the prospect of the state calling defendant’s own sister to contradict defendant’s witnesses, the court held that defense counsel employed a legitimate trial strategy by offering the stipulation.
 

 Crespo
 
 also involved the propriety of a stipulation provided by defense counsel
 
 {see,
 
 246 Conn 665, 718 A2d 925). The defendant in that case had strangled his girlfriend and sought counsel’s aid to arrange his surrender. After consulting with the defendant and his family, counsel contacted the police and informed them of the location of the body and circumstances of his disclosure. The defendant was arrested and never denied that he caused the victim’s death. He instead asserted that he did not intend to kill the victim and that he suffered from extreme emotional disturbance at the time of the killing. At trial defense counsel stipulated to the facts of his participation in the initial investigation. Specifically, the stipulation stated that counsel had contacted the state attorney, informed him of the location of the storage bin where the body was found, indicated that he had written consent authorizing the search, provided the keys to the bin and said that the person who gave him the keys was in his law office.
 

 On appeal defendant claimed that counsel testified against his interests by placing the stipulation of facts into evidence, thereby creating an actual conflict of interest. Although indicating its inability to rule on the ineffective assistance claim because it was unpreserved and the record was inadequate for review, the court noted that counsel’s decision to stipulate to readily ascertainable facts could have been a reasonable trial strategy. The court compared
 
 Beals
 
 to the facts of its case, and noted that in both “the information in the stipulation otherwise cpuld have been presented by the prosecution, but the use of the stipulation was strategically preferable to the defendant and the state”
 
 (Crespo,
 
 246 Conn at 691, 718 A2d at 939, citing
 
 Beals,
 
 162 111 2d at 504-505, 643 NE2d at 793). Interestingly, in
 
 Crespo
 
 the court stated, however, that “[i]f the stipulation [by defense counsel] is the equivalent of an attorney testifying against his client, it is, ipso facto, an actual conflict of interest” (246 Conn at 691, 718 A2d at 939).
 

 In
 
 Baldi
 
 (54 NY2d 137), this Court held that the defendant was not deprived of effective assistance of counsel even though his counsel testified as a witness, and portions of the counsel’s testimony contradicted the defendant’s testimony.
 
 Baldi,
 
 however, is readily distinguishable.
 

 
 *142
 
 Baldi’s attorney, attempting to further an .insanity defense,
 
 voluntarily
 
 testified at both trials and at a
 
 Huntley
 
 hearing on the defendant’s behalf
 
 (see generally
 
 22 NYCRR 1200.21 [c]). Here, by contrast, counsel was in jeopardy of giving compelled testimony against her client, in violation of the traditional advocate-witness rule
 
 (see
 
 22 NYCRR 1200.21 [d]). The decision to testify under the particular circumstances presented in
 
 Baldi,
 
 moreover, constituted a legitimate, if unique, trial strategy. The evidence against Baldi — who professed innocence — was overwhelming while counsel’s testimony sought to establish a foundation for a credible insanity defense. Here, it was not trial strategy that motivated counsel to impeach her own witnesses via the stipulation. Rather, counsel became a witness in the case when defendant’s witnesses provided a late alibi that differed from their earlier representations to her. Finally, Baldi’s counsel was not, as defense counsel is here, the only source of the impeachment evidence.
 

 Defense counsel’s stipulation in the instant case arose out of markedly different circumstances than the stipulations in
 
 Beals
 
 and
 
 Crespo,
 
 or defense counsel’s testimony in
 
 Baldi.
 
 Unlike
 
 Beals, Crespo
 
 and
 
 Baldi,
 
 defense counsel in this case was the
 
 only
 
 source of the information contained in the stipulation. Moreover, unlike the insignificant information provided by stipulation in
 
 Beals,
 
 defense counsel’s credibility was directly and necessarily pitted against that of the defense witnesses. Defense counsel’s stipulation here did not support defendant’s best defense or soften damaging evidence. Thus the stipulation was based on the assumed necessity of counsel’s testimony rather than a legitimate trial strategy. In these unique circumstances, defense counsel’s stipulation crystallized rather than cured the conflict of interest. Indeed, while counsel has a duty to disclose witness peijury to the court
 
 (see People v DePallo,
 
 96 NY2d 437 [2001]), that duty does not automatically require counsel to provide testimony to rebut the peijury.
 

 Whether a conflict of interest operates on the defense is a mixed question of law and fact
 
 (see People v Harris,
 
 99 NY2d 202, 210 [2002];
 
 People v Ming Li,
 
 91 NY2d 913, 917-918 [1998]). Here, however, there is no support in the record to conclude anything but that, as a matter of law, the conflict created by the adverse stipulation bore “a substantial relation to ‘the conduct of the defense’ ”
 
 (McDonald,
 
 68 NY2d at 9, quoting
 
 *143
 

 People v Lombardo,
 
 61 NY2d 97, 103 [1984]).
 
 [3]
 
 It may well be that defendant’s retrial will produce the same result, but there will be no question that defendant will have the benefit of representation that is not at cross purposes.
 
 [4]
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 [1]
 

 . The advocate-witness rule is nothing new; its genesis has been traced to both ancient Roman law and the treason trial of Sir Thomas More in 1535, where the prosecuting assistant called himself as a witness for the Crown
 
 (see,
 
 Luna,
 
 Avoiding a “Carnival-Atmosphere”: Trial Court Discretion and the Advocate-Witness Rule,
 
 18 Whittier L Rev 447, 453 [1997]).
 

 [2]
 

 . The first stipulation, deemed insignificant by the court, involved whether or not defendant was wearing a certain jacket at the time of the shooting
 
 (see Beals,
 
 162 Ill 2d at 504-505, 643 NE2d at 793). The second stipulation, considered irrelevant by the court, indicated that the witness in question had previously given defendant’s attorney a description of the
 
 driver
 
 of a car that picked up the shooter, and
 
 not
 
 the
 
 shooter
 
 as the prosecutor had incorrectly indicated during cross-examination
 
 (see id.).
 
 The court correctly noted that these stipulations contained no information that undermined or destroyed the witnesses’ testimony that they “saw a man wearing a blue or black outfit firing shots * * * at the approximate time the victims were shot” (162 Ill 2d at 504, 643 NE2d at 793).
 

 [3]
 

 . In light of this holding, we need not address defendant’s contention that the court failed to obtain a knowing and voluntary waiver of his right to conflict-free counsel (see
 
 McDonald,
 
 68 NY2d at 9; see
 
 also People v Gomberg,
 
 38 NY2d 307, 312-314 [1975]).
 

 [4]
 

 . “When lawyers have become intertwined with the merits [of a case] * * * they begin to look more like a traditional fact witness. In these circumstances, any factual statements that a lawyer makes should be subject to the same vetting that all witnesses receive, including the requirement that the witnesses be sworn and subject to cross-examination” (McMorrow,
 
 The Advocate as Witness: Understanding Context, Culture and Client,
 
 70 Fordham L Rev 945, 946 [2001]).