[824 NYS2d 220]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BIEN-
VENIDO PINA, Appellant.

First Department, October 10, 2006

## APPEARANCES OF COUNSEL

*Richard M. Greenberg, Office of the Appellate Defender,* New York City (*Saadia Aleem* and *Rosemary Herbert* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*Gregory H. Mansfield* and *Donald J. Siewert* of counsel), for respondent.

## OPINION OF THE COURT

McGUIRE, J.

Notwithstanding defendant's recitation at the time of the guilty plea that he was satisfied with the representation provided by his attorney, the court erred in not directing that a hearing be held on the motion defendant promptly made, assisted by new counsel, to vacate the guilty plea on the ground, inter alia, that prior counsel provided "conflicted, coercive and inadequate representation." Given the serious and partially corroborated allegations defendant made relating to his attorney— and other aspects of the plea colloquy itself—a hearing to determine the truth or falsity of those allegations was necessary.

In July of 2001, defendant and Bolivar Sanchez were charged with criminal possession of a controlled substance in the first degree and various less serious crimes following the execution of a search warrant at a bodega where defendant and Sanchez were employed. Pursuant to the warrant the police recovered, from underneath a trapdoor in the floor of the bodega, more than 360 glassines of crack cocaine. In addition, the People alleged that stolen identification and benefit cards, other contraband and a "fake NYS id card" of defendant and undescribed "personal effects" of both defendant and Sanchez were recovered from the bodega, although it is not clear where in the bodega these items were.

At a calendar appearance, on March 15, 2002, defendant's retained counsel requested a recess to discuss the plea offer with defendant. When the proceedings resumed, counsel stated that defendant wanted him to make a record of defendant's request for a court-appointed attorney "because he is unable to pay an attorney to go to trial." The court made no inquiry of defendant and immediately stated it was declining to do so. Af-

ter a pause, counsel reported that defendant wanted to accept the plea offer. Defendant was sworn and answered "yes" in response to questions from the court asking whether he had discussed the case with counsel, whether counsel had answered his questions and whether he was satisfied with counsel. In addition, the court asked whether defendant understood that despite the request for a new lawyer, counsel would be his lawyer were there a trial, and that counsel had never said he would not try the case and be defendant's lawyer. Again, defendant responded "Yes."

An otherwise uneventful plea colloquy ensued until the court asked defendant if he had any questions. Defendant responded: "The only thing, what I said about the attorney is because I don't have any money to pay for it." The court reiterated and expanded on what it had said earlier. Without asking defendant to explain himself, the court then stated it was not sure what defendant's problem was, told defendant that counsel had a professional obligation to represent him, that counsel had lived up to that "obligation entirely" and had never behaved in any way in the case "that would indicate there was some impediment to representing you." After thus effectively informing defendant that his concerns, whatever they were, were groundless, the court asked defendant if he had any other questions. Defendant answered, "No," and the plea colloquy continued. Other aspects of the colloquy are of note and will be mentioned below, but the plea was at least implicitly accepted by the court and the case was adjourned for sentencing.

Prior to sentencing, however, defendant obtained new counsel, who promptly moved to vacate the plea on three interrelated grounds: (1) defendant had received "conflicted, coercive and inadequate representation" from prior counsel, (2) defendant was innocent, and (3) the plea allocution did not establish his possession of two ounces of cocaine. As discussed below, the court erred in summarily denying the motion to vacate the plea.

The relevant background allegations in defendant's affidavit are that although defendant understood the bodega was owned by a woman named Ursula, it was run by her two brothers, Luis and Juan. After asserting he had stopped working at the bodega in April 2001 and began working the next month at GunHill Carpet, he stated he had agreed to work at the bodega for a few hours on July 18th when Sanchez called him the night before and asked him to do so. As he was working that day, police officers entered, searched the bodega, recovered from under the

floor in a back room narcotics about which he allegedly knew nothing and arrested him and Sanchez.

According to defendant, while he was waiting to be arraigned, counsel appeared in the holding area and told him he had been hired by Luis and Juan to represent him. Counsel told him not to say anything and Luis and Juan would get him out. Neither then nor at any other time did counsel either (1) inform him that Luis and Juan were subject to criminal liability for the narcotics and other contraband because they were in charge of the store, or (2) disclose the conflict of interest stemming from representing defendant while being paid by the individuals who controlled the bodega.

Further, Luis and Juan appeared in court on several occasions. Although counsel would speak with them outside defendant's immediate presence, defendant did not know what they discussed. On the date of the plea, counsel stated that Juan and Luis had stopped paying him and he was unable to locate them. In addition, counsel "intimated that if he wasn't paid his trial fee he wasn't going to do a very good job at trial." For these reasons and others, including repeated failures by counsel to make court appearances, defendant lost confidence in counsel and asked him to ask the court for new counsel. The court denied the request and defendant pleaded guilty, despite his innocence, to avoid going to trial with an attorney who said he would not work very hard without a trial fee, and the risk of spending 15 to 25 years to life in prison.

Defendant's wife also submitted an affidavit. For her part, she swore that she spoke with counsel on several occasions; he repeatedly asked when he was going to get paid and told her to contact the owners of the store so he could get paid. Two days before the plea, she spoke on the telephone with counsel. He told her defendant "had to take a plea" on the next court date because he was not willing to take the case to trial without being paid. She asked if he would be "willing to wait until [she] got her income tax refund," but counsel said the fee was "a lot of money" and her refund check would not go very far. Although she then told counsel his services were no longer needed and she would speak to defendant about getting a court-appointed attorney, counsel stated he was obligated to keep up with the case and that if he did not get paid he "wouldn't be too happy about it."

In essence, defendant alleged in his motion that his attorney was hired by two individuals who had strong incentives to see

him go gently into the less than good night of state prison. Indeed, assuming the truth of these allegations, the only reasonable inference is that Juan and Luis hired counsel for someone they knew to be innocent and consulted with that attorney precisely so that defendant would not implicate them.

If true, these allegations would establish more than that counsel failed in his duty to recognize a potential conflict, alert defendant to it and obtain his informed consent (*see People v Berroa*, 99 NY2d 134, 139 [2002]; *People v McDonald*, 68 NY2d 1, 8 [1986]). They would at least tend to establish that counsel represented interests which were actually in conflict with those of defendant. The very failure of counsel to discuss the issue of a conflict with defendant would itself be a breach of counsel's duty of loyalty (*see People v Longtin*, 92 NY2d 640, 644 [1998], *cert denied* 526 US 1114 [1999]). Indeed, other violations of that duty would be inevitable (*id.* ["A lawyer who represents two clients with conflicting interests by definition cannot give either client undivided loyalty" (citations omitted)]). Moreover, as the Supreme Court has observed:

> "Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest" (*Wood v Georgia*, 450 US 261, 268-269 [1981]).

Additionally, both defendant and his new counsel supported the motion with allegations tending to show that the conduct of the defense was in fact affected by the conflict and that the conflict "operated on" counsel's representation (*see People v Longtin*, 92 NY2d at 644). As new counsel pointed out, prior counsel failed to make factual allegations relating to defendant's standing, even with respect to the personal effects, and the motion to suppress was denied on account of this failure. According to new counsel, prior counsel never obtained the affidavits underlying the search warrant or the search warrant itself. For several reasons articulated by counsel, the case against defendant was thin, particularly

because the cocaine allegedly had been recovered from a hiding place under the floor and defendant, who had been working elsewhere at a carpet store for over two months, was in the bodega essentially by happenstance when the warrant was executed. Yet, according to defendant's affidavit, prior counsel never discussed the possibility of his testifying before the grand jury. And, of course, defendant also alleged that prior counsel never disclosed the conflict, had spoken with Luis and Juan outside defendant's presence and all but stated he would not do a very good job at trial if he was not paid.

To be sure, defendant's protestations of innocence were contradicted by his own plea allocution. All or some of the specific allegations against counsel may be false and there may be reasonable explanations for the asserted deficiencies in the representation he provided. But it is at least worthy of note that during the plea allocution, defendant repeatedly stated he did not know when asked questions regarding the number of packages of drugs recovered. And although the prosecution alleged the drugs were under a trapdoor, defendant stated the drugs were "[i]n the back part" and "[o]n the floor" when asked where the drugs were. More importantly, however, while trial courts must and should be skeptical about claims of innocence that follow admissions of guilt, the risk that innocent persons will falsely implicate themselves is a real one. Whatever the incidence of false guilty pleas may be, the risk that such a plea will occur surely is greatest when, as here, a defendant is offered a plea bargain that avoids a possible life sentence and virtually ensures freedom in a year or two. Unfortunately, the risk that some attorneys will not act in the highest tradition of the bar also is one of which the law must be mindful.

For these reasons, we hold this appeal in abeyance and remand for a hearing on defendant's claim that he was denied his right to conflict-free counsel.

Accordingly, the appeal from a judgment of the Supreme Court, New York County (Micki A. Scherer, J.), rendered June 19, 2002, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the second degree, and sentencing him to a term of three years to life, should be held in abeyance, and the matter remanded for a hearing on defendant's claim that he was denied his right to conflict-free counsel.

ANDRIAS, J.P., SAXE, SULLIVAN and WILLIAMS, JJ., concur.

Appeal from judgment, Supreme Court, New York County, rendered June 19, 2002, held in abeyance, and the matter remanded for a hearing on defendant's claim that he was denied his right to conflict-free counsel.