[3 NE3d 687, 980 NYS2d 350]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DONALD O'TOOLE, Respondent.

Argued November 14, 2013; decided December 10, 2013

### POINTS OF COUNSEL

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Timothy C. Stone* and *Susan Gliner* of counsel), for appellant. Because the essential element of "force" with respect to both the first and second degree robbery charges filed against defendant was predicated on the display of a gun by defendant's accomplice, when defendant was initially acquitted on the first charge and convicted on the second, the People could not properly be collaterally estopped from presenting evidence about the display of the gun at a retrial of the second degree robbery conviction. (*People v Scarola*, 71 NY2d 769; *People v Lewis*, 69 NY2d 321; *People v Hines*, 97 NY2d 56; *People v Berkowitz*, 50 NY2d 333; *People v Acevedo*, 69 NY2d 478; *People v Aguilera*, 82 NY2d 23; *People v Plevy*, 52 NY2d 58; *Montana v United States*, 440 US 147; *Duffy v Vogel*, 12 NY3d 169; *Bansbach v Zinn*, 1 NY3d 1.)

*Steven Banks, The Legal Aid Society*, New York City (*Katheryne M. Martone* of counsel), for respondent. The Appellate Division correctly determined that, in light of the first jury's acquittals of all counts involving a gun and extortion attempts, the trial court erred in permitting evidence of the alleged display of a firearm during the robbery and demands for protection money. (*People v Acevedo*, 69 NY2d 478; *Ashe v Swenson*, 397 US 436; *Dowling v United States*, 493 US 342; *Yeager v United States*, 557 US 110; *United States v Oppenheimer*, 242 US 85; *United States v Kramer*, 289 F2d 909; *Sealfon v United States*, 332 US 575; *People v Goodman*, 69 NY2d 32; *People v Berkowitz*, 50 NY2d 333; *People v Tucker*, 55 NY2d 1.)

### OPINION OF THE COURT

Smith, J.

We hold that on the facts of this case defendant's acquittal of a charge of first degree robbery that was based on the alleged display of a firearm barred the People from introducing, at a later trial for second degree robbery, evidence that a firearm was displayed.

I

Defendant was charged with first and second degree robbery and other crimes. The first degree charge was brought under Penal Law § 160.15 (4), which is applicable when a person "forcibly steals property" and "he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." The second degree charge was based on Penal Law § 160.10 (1). Under that statute, the second degree crime is committed when a person "forcibly steals property and . . . is aided by another person actually present."

At defendant's first trial, Phillip Horsey, the manager of a barber shop, testified that defendant told him he was entitled to "money from the shop," and that if he did not get it he would "close the shop." About an hour after this conversation, according to Horsey's testimony, a large man walked into the barber shop and handed Horsey a telephone. When Horsey picked up the phone, he heard defendant's voice telling him to "[g]ive my man the jewels." Horsey then turned to face the man from whom he had taken the phone, and saw that the man was pointing a gun at his stomach. Horsey, followed by the armed man, walked out the door and encountered defendant in front of the shop. After some conversation, Horsey gave defendant a valuable gold chain.

The jury at the first trial acquitted defendant of first degree robbery and convicted him of second degree robbery. The Appellate Division reversed (on an issue not relevant here) and ordered a new trial on the second degree robbery charge (*People v O'Toole*, 39 AD3d 419 [1st Dept 2007]).

At the second trial, defendant moved to preclude the People from introducing evidence that his alleged accomplice used a gun in the robbery. The trial court denied the motion, and Horsey testified at the second trial, as he did at the first, that the large man pointed a gun at him. Defendant was again convicted of second degree robbery. The Appellate Division again reversed, holding that the People were collaterally estopped by the earlier verdict from presenting evidence of the gun (*People v O'Toole*, 96 AD3d 435 [1st Dept 2012]). A Judge of this Court granted the People leave to appeal (20 NY3d 934 [2012]), and we now affirm.

## II

This case is controlled by our holding in *People v Acevedo* (69 NY2d 478, 480 [1987]) that "the doctrine of collateral estoppel can be applied to issues of 'evidentiary' fact." As we explained in *Acevedo*, in the analysis of collateral estoppel issues, facts essential to the second judgment are considered "ultimate" facts; other facts are only "evidentiary" (*id.* at 480 n 1). Under *Acevedo*, when an issue of evidentiary fact has been resolved in a defendant's favor by a jury, the People may not, at a later trial, present evidence that contradicts the first jury's finding.

The facts of *Acevedo* illustrate the principle. Acevedo was first tried for, and acquitted of, robbing a man named Jakiela. Both Jakiela and Acevedo testified at the first trial, giving totally inconsistent versions of their interactions on the morning in question: Jakiela testified to a robbery at a gas station, Acevedo to a sexual encounter in a park. Later, defendant was tried for robbing another man on the same morning, and Jakiela was called as a People's witness. He again testified that he had seen Acevedo that morning at the gas station, not the park. We held that the use of this testimony at the second trial was impermissible because, giving a "practical, rational reading to the record of the first trial," it was apparent that the first jury had rejected Jakiela's version of events (*id.* at 487-488).

Here, as in *Acevedo*, we see no "practical, rational" escape from the conclusion that the jury's finding at the first trial was inconsistent with evidence presented by the People at the second one. The first jury acquitted defendant of first degree robbery and convicted him of second degree robbery. It could not logically have done so without finding that the People had failed to prove beyond a reasonable doubt that the robbery involved the display of a firearm. The dissent would distinguish *Acevedo* on the ground that in that case the first jury affirmatively found Acevedo's testimony to be true and Jakiela's untrue, whereas here the first jury found only reasonable doubt about Horsey's testimony that he was robbed at gunpoint; but the distinction is a false one. In any criminal case, an acquittal is only a finding of reasonable doubt, not a finding that defendant is in fact innocent. The first jury's acquittal in *Acevedo* implied only that the jury was not convinced beyond a reasonable doubt that Jakiela was telling the truth, and our comment that the jury "concluded that Jakiela's testimony was incredible" (69 NY2d at 488) meant no more than this.

The People, while arguing that *Acevedo* is distinguishable, also suggest that we should overrule it. The *Acevedo* holding has, the People argue, been undermined by the United States Supreme Court's decision in *Dowling v United States* (493 US 342 [1990]). But *Acevedo* and *Dowling* are not inconsistent. *Dowling* decided that the Due Process and Double Jeopardy Clauses of the Federal Constitution do not require the application of collateral estoppel where "the prior acquittal did not determine an ultimate issue in the present case" (*id.* at 348). *Acevedo* did not purport to decide any federal or state constitutional question. It held only that, as a matter of New York law, collateral estoppel applies to issues of evidentiary as well as ultimate fact. *Dowling* furnishes no reason to abandon that holding.

It is nonetheless true, as the People and the dissent point out, that the application of *Acevedo* can cause practical problems. There is force to the People's argument, paraphrased by the dissent, that the facts they sought to prove at the second trial "were the facts the victim told police, and . . . they should not be required to put on a case pretending the facts were any different" (dissenting op at 340). The likelihood that such problems will arise leads us to suggest that collateral estoppel should be applied sparingly in criminal cases—as it has been to date; this is the first case since *Acevedo*, decided 26 years ago, in which we have held the doctrine applicable.

But here, the problems *Acevedo* presents could have been— and could still be, at a retrial—handled without unreasonable difficulty. The People could refrain from asking Horsey questions that call for testimony about the firearm, and could warn Horsey not to volunteer it. If it becomes apparent, in this case or any other, that the *Acevedo* rule cannot practicably be followed if a necessary witness is to give truthful testimony, then collateral estoppel should not be applied. Nor should defense counsel be allowed to take unfair advantage of the dilemma that *Acevedo* creates for the People. Nothing in *Acevedo*, or in our opinion today, bars the People from walking through any door that defendant may open (*see People v Massie*, 2 NY3d 179 [2004]; *People v Melendez*, 55 NY2d 445 [1982]).

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (concurring). I concur in the result and agree that *People v Acevedo* (69 NY2d 478 [1987]) controls the decision on

this appeal so that the People were barred by collateral estoppel from introducing evidence of the displayed firearm at the second trial. I part ways with the majority where it advocates "that collateral estoppel should be applied sparingly in criminal cases" (majority op at 339).

The rule announced in *Acevedo* that collateral estoppel applies to both evidentiary and ultimate facts ensures fairness to the defendant and remains as important and vital today as the day it was decided. The majority points only to the practical application of collateral estoppel to justify retreat from the doctrine in the criminal context (*see* majority op at 339). Yet, those concerns proved unavailing in *Acevedo* where we adopted a broad interpretation of collateral estoppel even while recognizing that "[t]he governing principles are more easily articulated than applied" (*Acevedo*, 69 NY2d at 487). We did so because a "[d]efendant, having once been acquitted by a jury, should not at a subsequent trial be subjected to the burden of meeting issues that were already necessarily decided in [defendant's] favor" (*id.* at 485, citing *People v Goodman*, 69 NY2d 32, 37 [1986]).

I cannot join in the majority's suggestion that *Acevedo* should be relegated to the margins of legal doctrine, or altogether dismissed. Instead, I remain convinced of the wisdom of a prohibition against anyone being forced to defend against " 'charges or factual allegations which [he or she] overcame in [an] earlier trial' " (*Acevedo*, 69 NY2d at 487, quoting *Wingate v Wainwright*, 464 F2d 209, 214 [1972]).

PIGOTT, J. (dissenting). In a retrial of defendant Donald O'Toole on a charge of robbery in the second degree (Penal Law § 160.10 [1] [aided by another person actually present]), the People sought to offer into evidence testimony that the person who was "actually present" with O'Toole appeared to have a gun, and that O'Toole twice attempted to extort protection money from Phillip Horsey, the robbery victim. The evidence was not to be offered to prove robbery in the first degree; defendant had been acquitted of that charge. It was, however, important to the People because those were the facts the victim told police, and, they argued, they should not be required to put on a case pretending the facts were any different. O'Toole moved to preclude that evidence, on the ground that it amounted to factual findings resolved in his favor at the first trial. Supreme Court denied his motion, concluding that specific factual findings could not be gleaned from the jury's verdict. In my view,

Supreme Court's decision was correct. I would reverse the order of the Appellate Division.

In *People v Acevedo* (69 NY2d 478 [1987]), we applied the doctrine of collateral estoppel to preclude the People from relitigating a defendant's presence at the location of an alleged robbery, in a separate trial of the same defendant for a different robbery. It was the first time we had upheld the application of collateral estoppel in a criminal case (*see People v Aguilera*, 82 NY2d 23, 29 [1993]); and there was a good reason for it.

The defense at Acevedo's first trial—where it was alleged that he had robbed one Jakiela and in which he was acquitted of robbery and criminal possession of a weapon—had several unusual aspects, which influenced our decision in that appeal, and which the majority now ignores.

Acevedo's alleged robbery victim, Jakiela, testified that Acevedo and a knife-wielding companion accosted him at a gas station in Buffalo and forced him to hand over cash and a gold ring. Acevedo, however, testified that Jakiela had concocted a false accusation for the purpose of revenge. According to Acevedo, Jakiela had made a sexual advance to him when the two men were smoking marijuana together one night in Acevedo's car, in a local park. Acevedo testified that he had forced Jakiela to get out of the car and walk some distance in the cold to his own vehicle, eliciting a vow by Jakiela to "get" Acevedo.

Crucially, defense counsel at Acevedo's first trial did not contend that the People had failed to prove any particular element of the crimes, and did not challenge the complainant's ability to identify defendant as one of his assailants (*see* 69 NY2d at 488). Instead, the defense focused entirely on Jakiela's lack of credibility (*see id.* at 482-483). In fact, as noted by the prosecution, "if Mr. Jakiela's testimony is to be believed, the Defendant is guilty, [and his counsel] makes no bones about that" (*id.* at 482). In other words, as we summarized, "[b]oth the People and the defendant posited the case as an all-or-nothing proposition" (*id.* at 487-488), based on whether the jury believed Acevedo or Jakiela.

The *Acevedo* jury acquitted defendant on both counts, and, we decided, the jury must necessarily have concluded that Jakiela's testimony was incredible, and that "defendant and Jakiela encountered each other in the park (as related by defendant), not at the gas station (as related by Jakiela)" (69 NY2d at 487). "Unlike many other criminal cases, this one was devoid of

alternative possibilities" (*id.*). We concluded that, in Acevedo's second trial, involving a separate alleged robbery that same night, the People could not introduce Jakiela's testimony that Acevedo had been at the gas station, since that issue had been necessarily decided in Acevedo's favor at the first.

As we made clear in *Acevedo*, "[d]efendant's burden to show that the jury's verdict in the prior trial *necessarily* decided a particular factual issue raised in the second prosecution is a heavy one indeed, and as a practical matter severely circumscribes the availability of collateral estoppel in criminal prosecutions" (69 NY2d at 487). This is in large part because criminal verdicts are general ones; it is usually not possible to ascertain whether a certain factual finding led to the acquittal, unlike a civil trial verdict, with its specific interrogatories answered by the jury.

In *Acevedo*, we could reach the conclusion that the first jury must necessarily have found that Acevedo was not at the gas station because the dispositive issue for the jury was credibility. We reasoned that, "by acquitting defendant . . . , the jury *necessarily* concluded that Jakiela's testimony was incredible" (69 NY2d at 488) and that no gas station robbery ever occurred. As we took care to explain, the jury must have reached this affirmative factual finding because the case was "devoid of alternative possibilities" (*id.* at 487).

That is not the case here. The jury in O'Toole's first trial could have based its decision that O'Toole was not guilty of first-degree robbery on a number of grounds other than an affirmative finding that his companion did not display what appeared to be a firearm. Most obviously, as Supreme Court noted, the jury could have acquitted because reasonable doubt prevented it from reaching an affirmative finding one way or the other.

It is possible, for example, that the *O'Toole* jury decided that the People had not shown beyond a reasonable doubt that O'Toole's accomplice displayed a firearm, but at the same time decided that there was sufficient evidence to prove that O'Toole forcibly stole Horsey's gold chain by using his accomplice's large physical size and proximity to Horsey (and Horsey's child) as a threat. If so, the jury could rationally have acquitted O'Toole of first-degree robbery (Penal Law § 160.15 [4] [displays what appears to be a firearm]), but convicted him of second-degree robbery (Penal Law § 160.10 [1] [aided by another person actually

present]). The jury would then have reached its verdicts without affirmatively finding that there was no firearm.

Nor would such a jury finding be irrational or surprising. The jury may reasonably have been skeptical that a gun was displayed, given the public nature of a barber shop; the jurors may have concluded that Horsey was embellishing, either to save face or to try to strengthen the prosecution's case. Or, in light of skepticism by some jurors, the jury may have reached a compromise verdict, by agreeing on the second-degree robbery conviction.

But a jury's decision that a factual proposition has not been proven beyond a reasonable doubt is not the same as a jury's affirmative finding that the proposition is not true. Put another way, being doubtful that there was a gun is not the same as finding that there was no gun. Collateral estoppel would be justified only if it were clear that the jury must necessarily have found that there was no gun.

This does not mean that defendant would not have benefitted from his acquittal. He would not have been recharged or retried on a first-degree robbery charge. No matter what the proof, he could not have been convicted of more than second-degree robbery.

Similar reasoning requires a reversal also with respect to the evidence that O'Toole tried to extort protection money from Horsey, which O'Toole also sought to preclude in his second trial. The first jury, in acquitting O'Toole of attempted second-degree grand larceny, did not necessarily reach an affirmative finding that there was no extortion; the jury may simply have decided that the People did not prove the elements of the crime beyond a reasonable doubt.

In my view, a strict and narrow interpretation of our holding in *Acevedo* is required. Although the majority takes a different approach, there is one thing we agree on: "collateral estoppel should be applied sparingly in criminal cases" (majority op at 339).

Judges GRAFFEO, READ and ABDUS-SALAAM concur with Judge SMITH; Judge RIVERA concurs in result in an opinion in which Chief Judge LIPPMAN concurs; Judge PIGOTT dissents and votes to reverse in an opinion.

Order affirmed.