This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 201
The People &c.,
              Respondent,
          v.
Luis Ortiz,
              Appellant.

Anant Kumar, for appellant.
Catherine M. Reno, for respondent.

PIGOTT, J.:

This case presents two issues for our review. The first is whether the doctrine of collateral estoppel bars the People from introducing, at defendant's second trial, evidence that defendant threatened the victim of a burglary with a razor blade when the jury had acquitted defendant of charges involving

- 1 -

the use or threatened use of a dangerous instrument at the first trial. The second issue is whether the trial court erred when it permitted the People to introduce a statement made by defense counsel at arraignment that was damaging to her client but then denied counsel's request to withdraw. We hold that collateral estoppel does not apply in this case but that the advocate-witness rule required the court to grant counsel's motion to withdraw or to declare a mistrial.

I.

Defendant Luis Ortiz was charged with burglary in the first degree (Penal Law § 140.30[3]), burglary in the second degree (Penal Law § 140.25) and related offenses in connection with an incident that occurred on July 20, 2006 in the Bronx. According to the People, Colpo Manuel Valenzuela was entering his apartment with his girlfriend, Para Nunez, around 1:00 in the afternoon when defendant approached them from behind. Defendant grabbed Nunez and, while holding a razor blade to her neck, pushed Valenzuela and Nunez through the door. He threatened to cut Nunez's throat if Valenzuela did not give him money or jewelry. Valenzuela struck defendant in the head, causing defendant to drop the razor blade and allowing Nunez to break free. While Valenzuela and defendant struggled, Nunez ran to get Valenzuela's nephew, Jose Henrique Colon, who had been sleeping in one of the bedrooms in the apartment. Together, Colon and Valenzuela restrained defendant on a bed and Nunez called 911.

She told the operator that someone had broken in and that Valenzuela had cornered the intruder with a kitchen knife.

Valenzuela, Colon and Nunez all testified to that effect at trial.  Defendant, however, told a different story.  He testified that he and a female friend went to the apartment building looking for a room to rent and stopped at Valenzuela's apartment to ask for the superintendent.  Valenzuela made inappropriate comments to defendant's friend and the two men engaged in a verbal altercation that escalated into a full-fledged fight.  At some point during the struggle, according to defendant, Valenzuela pulled defendant into the apartment.  He testified that he was unarmed but that Valenzuela grabbed a kitchen knife and lunged at defendant, eventually restraining him on the bed.

The jury rejected defendant's rendition of events and found him guilty of burglary in the second degree.  It acquitted him, however, of burglary in the first degree and robbery in the first degree.  The Appellate Division reversed the conviction for reasons not relevant to this appeal (69 AD3d 490 [1st Dept 2010]), and defendant proceeded to a second trial on the sole charge of burglary in the second degree.

Before the second trial began, defense counsel moved to preclude the prosecution from presenting evidence of the razor blade at trial.  Counsel argued that the jury in the first trial necessarily decided that defendant did not use a razor blade by

acquitting him of first-degree burglary, which requires the

People to prove that defendant used or threatened the use of a

dangerous instrument (see Penal Law § 140.30).  The trial court

denied the motion and allowed the People's witnesses to testify

about the use of the razor blade when giving their accounts.

Defendant testified on his own behalf, as he did at the

first trial.  On cross-examination, the People attempted to

impeach defendant's testimony that Valenzuela came after him with

a kitchen knife with the following statement made by his counsel

at arraignment:

> Your Honor, my understanding of the events for
> [defendant] is vastly different [from the
> prosecution's].  I believe [defendant] was at
> this apartment looking to possibly rent a room
> there.  An argument began between him and the
> landlord, and at which point the complaining
> witness came after him with a razor blade,
> which explains why it was recovered, and that
> it belongs to the people who lived there
> [emphasis added].

The People sought to introduce this statement to show that

defendant previously told his attorney that Valenzuela came after

him with a razor blade, not a kitchen knife, as he testified.

Defense counsel vigorously objected, arguing that she misspoke at

arraignment and that introducing the statement would force her to

become a witness.  The court overruled defendant's objection and

allowed the prosecutor to impeach defendant with counsel's prior

statement.

After defense counsel had an opportunity to review her

notes from the arraignment, she discovered that she had indeed

misspoken.  As it turned out, defendant had told her Valenzuela came after him with a knife, not a razor blade, consistent with his testimony during trial.  The court reviewed her notes and confirmed that her statement at arraignment did not reflect what defendant had told her.  In light of this revelation, defense counsel asked to withdraw as counsel and moved for a mistrial.  She argued that her client's right to confront her about the statement would require her to take the stand and tell the jury that she misstated material facts moments before advocating for her client's innocence in summation.

The court denied counsel's requests but offered to have another attorney question her about the statement or to introduce a stipulation as to what counsel would say if asked about the statement.  After renewing her objection and being overruled a second time, defense counsel agreed to the stipulation, which the court read aloud to the jury.  It provided that if counsel were to testify, she would state that her remarks at arraignment were incorrect and that defendant did not tell her Valenzuela had come after him with a razor blade, but rather, defendant told her Valenzuela came after him with a kitchen knife.  Following deliberations, the jury convicted defendant of burglary in the second degree.

Defendant moved to set aside the conviction pursuant to CPL 330.30(1) on the grounds that the trial court erred in not precluding testimony about the razor blade and in denying defense

counsel's motion to withdraw.  Supreme Court denied the motion and sentenced defendant as a persistent felony offender to twenty-three years to life in prison.

The Appellate Division modified the judgment by vacating the sentence and remanding the case for resentencing, and as so modified, affirmed (114 AD3d 430 [1st Dept 2014]).  A Judge of this Court granted defendant leave to appeal (24 NY3d 1087 [2014]), and we now reverse.

II.

The doctrine of collateral estoppel originated in civil litigation as a means of ensuring the swift and peaceful resolution of disputes (see People v Goodman, 69 NY2d 32, 37 [1986]).  It applies in criminal prosecutions to bar relitigation of issues resolved in a defendant's favor at an earlier trial (see People v Acevedo, 69 NY2d 478, 484 [1987]).  We considered the doctrine most recently in People v O'Toole (23 NY3d 335 [2013]) where we held that defendant's acquittal of first degree robbery based on the alleged display of a firearm barred the People from introducing, at a later trial for second-degree robbery, evidence that a firearm was displayed (id. at 336).

The defendant in that case took a gold chain from a man named Horsey who managed a barber shop.  He was charged with, among other things, robbery in the first degree based on the display of a firearm and robbery in the second degree for being aided by another person actually present (id. at 337).  At

defendant's first trial, Horsey testified that he owed the defendant money and that the defendant threatened to close his barber shop if Horsey didn't pay.  About an hour after defendant made the threat, a large man walked into the shop, pointed a gun at Horsey and handed him a telephone with defendant's voice on the other end (id.).  Horsey's young child was sitting nearby (id. at 342 [Pigott, J., dissenting]).  Horsey followed the man out of the store, where the defendant was waiting for him, and gave the defendant a valuable gold chain (id. at 337).  The jury acquitted the defendant of the first-degree charge but convicted him of second-degree robbery.  We concluded that the jury could not have logically acquitted the defendant of first-degree robbery unless it necessarily decided that the People failed to prove beyond a reasonable doubt that the robbery involved the display of a firearm (id.).

We also observed, however, that the rigid application of collateral estoppel sometimes gives way to society's interest in ensuring the correctness of criminal prosecutions (see id. at 339; see also People v Berkowitz, 50 NY2d 333, 345 [1980]).  Thus, we said that if it becomes apparent, in a future case, that collateral estoppel "cannot practicably be followed if a necessary witness is to give truthful testimony, then [the doctrine] should not be applied" (O'Toole, 22 NY3d at 339).  Collateral estoppel did not pose practical difficulties in O'Toole because the facts could be told in such a way, on

retrial, that they did not call for testimony about the firearm: the second-degree robbery charge required the People to prove only that defendant forcibly stole property aided by another person actually present.  Without mentioning the firearm, Horsey could have testified that a large man came into his shop, near Horsey's young child, handed him a phone with defendant on the other end and led Horsey outside to meet defendant, who ultimately stole Horsey's gold chain.  That version of events would not have required the complaining witness to materially alter his testimony or provide the jury with a misleading or untruthful account.

By contrast, the practical difficulties of applying collateral estoppel in this case "outweigh the otherwise sound reasons for preventing repetitive litigation" (Berkowitz, 50 NY2d at 344).  Unlike the witness in O'Toole, Nunez and Valenzuela would have had to materially alter their testimony and mislead the jury in order to omit reference of the razor blade.  They both testified that defendant threatened to cut Nunez's throat if Valenzuela did not give him money or jewelry and that defendant made a slitting gesture with his hand when he uttered the threat. If not permitted to mention the razor blade, the complainants would have been required to eliminate this portion of their testimony or else state, misleadingly, that defendant pushed Nunez and Valenzuela into the apartment and threatened to hurt Nunez simply by grabbing her from behind, without a weapon.

Nunez would not have been able to explain, however, how defendant threatened her or what he threatened to do.  Nunez also would have been prevented from explaining why she put up no resistance to a man she had never seen before.

Contrary to defendant's assertion, the fact that Nunez did not tell the 911 operator about the razor blade does not mean she could omit it from her testimony in court.  The 911 call reflects Nunez's hurried and frightened description of the emergency, not its inception, and it is likely that Nunez neglected to tell the operator every detail that would ultimately become part of her trial testimony.  Moreover, at the time of the call, defendant was not wielding a weapon because Valenzuela and Colon had apparently restrained him on a bed.

The material changes that these key witnesses would have had to make to their testimony in order to recount the incident without reference to the razor blade present the kind of "unreasonable difficulty" that, as we warned in O'Toole, jeopardizes the jury's truth-seeking function and outweighs the need for collateral estoppel.  Therefore, even if the jury necessarily decided that defendant did not use or threaten to use the razor blade, the Appellate Division correctly determined that the doctrine does not apply.

### III.

The second issue in this appeal concerns the advocate-witness rule.  Pursuant to that rule, a lawyer must withdraw from

representation when it becomes apparent that she must testify on behalf of her own client (former Code of Professional Responsibility DR 5-102[a] [22 NYCRR 1200.21(a)]; Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7[a] [current, similar provision]; see also People v Berroa, 99 NY2d 134, 140 [2002] [an attorney "should not continue to serve as an advocate when it is obvious that the lawyer will be called as a witness on behalf of the client"]).  The rule seeks to avoid "the unseemly circumstance of placing an attorney in a position in which he must argue the credibility of his own testimony" (Ellis v Broome Cnty, 183 AD2d 861, 862 [3d Dept 1984]), which may "confuse the fact-finder and impair the fairness of the trial" (People v Townsley, 20 NY3d 294, 299 [2012]).

In Berroa, we held that a stipulation by defense counsel violated the advocate-witness rule and deprived defendant of his right to conflict-free counsel where the stipulation transformed the defendant's advocate into an adverse witness and pitted counsel's credibility against other witnesses (99 NY2d at 138).  Defendant's trial counsel in Berroa was the only person who could impeach two key defense witnesses whose testimony deviated in substantial part from information they had provided to counsel before trial.  Although the parties agreed to a stipulation in lieu of having counsel testify, we held that the stipulation exacerbated counsel's conflict by "eviscerating the credibility of her client's witnesses and his defense" (id. at

139).

Defendant's counsel was placed in a similarly untenable position in this case when the People introduced counsel's statement from arraignment. Anyone familiar with arraignment practices in New York City criminal courts understands the hurried nature of those proceedings and the likelihood, as occurred here, that defense counsel may appear on behalf of 30 defendants in one night. It is no surprise then that she mistakenly stated that defendant told her Valenzuela came after him with a razor blade instead of a knife. The prosecutor sought to use this statement to attack defendant's credibility, and in doing so, caused defendant's advocate to become his adversary. Indeed, defendant's credibility was attacked by the one person in the courtroom whose job was to advocate for it.

The situation went from bad to worse when it became clear that the only way for defense counsel to rehabilitate her client's credibility was to impugn her own, moments before she would argue for her client's innocence in summation. Any way you look at it, defense counsel had no choice but to withdraw. In these unusual circumstances, we hold that the trial court should have granted counsel's request to withdraw or declared a mistrial.

The People's reliance on People v Brown (98 NY2d 226 [2002]) and People v Rivera (58 AD2d 147 [1st Dept 1977] affd 45 NY2d 989 [1978]) is misplaced. The statements admitted in those

cases were made by defendants' <u>former</u> attorneys and therefore did not involve the issue of whether a defendant's current counsel must withdraw when her statements are inconsistent with the defendants' testimony at trial. Unlike defense counsel in this case, the defendants' trial attorneys in <u>Brown</u> and <u>Rivera</u> were not set up to attack their clients' credibility or, by stipulation, their own.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order reversed and a new trial ordered. Opinion by Judge Pigott. Chief Judge Lippman and Judges Rivera, Stein and Fahey concur. Judge Abdus-Salaam took no part.

Decided December 16, 2015