OPINION OF THE COURT
Peter M. Forman, J.
Defendant seeks an order vacating his judgment of conviction pursuant to CPL 440.10. Defendant makes this motion on the grounds that the judgment was obtained in violation of his right to the effective assistance of counsel, in that his attorney allegedly misrepresented the immigration consequences that would flow from his plea to bail jumping in the first degree. Defendant also asserts that his guilty plea was not knowingly and voluntarily entered because the judge did not advise defendant of the possible deportation consequences associated with his plea. For the reasons stated herein, that motion is denied.
Background
On or about July 20, 1989, defendant was arrested for felony possession of 31 packets of cocaine. According to the Huntley notice that the People filed in that case, defendant admitted that he was selling the drugs out of an apartment located in the City of Poughkeepsie.
On or about May 14, 1990, defendant was arraigned in Dutchess County Court on indictment No. 55/90. The indictment charged defendant with one count of criminal possession of a controlled substance in the third degree, a class B felony, in violation of Penal Law § 220.16 (1), on the theory that defendant possessed the cocaine with the intent to sell it. The indictment also charged defendant with one count of criminal possession of a controlled substance in the third degree, a class B felony, in violation of Penal Law § 220.16 (12), on the theory that defendant possessed a substance containing cocaine with an aggregate weight of more than one-half ounce.
On September 17, 1990, the County Court (Hillery, J.) conducted a Huntley hearing. Upon completion of that hearing, Judge Hillery denied defendant’s motion to suppress his statement, and directed the parties to return to the courtroom the following day for jury selection. Defendant failed to return to *881 court on that date, or at any other time over the next 3V2 years. On October 3, 1990, Judge Hillery issued a bench warrant based upon defendant’s failure to appear in court as directed.
On or about July 26, 1994, defendant was arraigned in the Dutchess County Court on indictment No. 115/94. That indictment charged him with one count of bail jumping in the first degree, a class D felony, in violation of Penal Law § 215.57.
On September 14, 1994, defendant entered a plea of guilty to one count of bail jumping in the first degree before County Court Judge George G. Marlow. Defendant entered that plea in satisfaction of all charges pending in both indictments, in return for a promised sentence of 1 to 3 years in state prison. As part of this plea bargain, the People also represented that they had no objection to defendant’s enrollment in the shock incarceration boot camp program while in state prison which, if successfully completed, would lead to defendant’s early release. No appeal was taken from that conviction.
During his plea allocution, defendant stated that he had been provided sufficient time to discuss his guilty plea with his attorney, that he was satisfied with the representation that he had received from his attorney, and that he was convinced that it would be better to plead guilty than to go to trial. Defendant also stated that no one had threatened him or coerced him into pleading guilty, that he was entering the plea of his own free will, and that he did not have any questions for the court or his attorney or anyone else before pleading guilty.
Judge Marlow did not ask defendant whether he was a United States citizen, and did not make any inquiry as to whether defendant understood the potential immigration consequences associated with his plea. The record is silent as to whether defendant and his attorney discussed the potential immigration consequences associated with this plea. To the extent that such a conversation may have occurred, the record does not provide any information as to the contents of that conversation.
Defendant states that he was born in Jamaica, and that he legally entered this country in 1982 on a green card sponsored by his father. Defendant has continuously resided in this country since that time. Defendant married a U.S. citizen in 2002. Defendant and his wife live together in Brooklyn, along with their four children. Defendant also has another child from a previous relationship. That child is a U.S. citizen, and resides with defendant’s parents.
*882 Defendant asserts that, when he recently attempted to apply for U.S. citizenship, he was informed that his “prior conviction posed a problem in terms of immigration.” Specifically, defendant asserts that his bail jumping conviction constitutes an “aggravated felony” under the relevant immigration laws. Defendant also asserts that an aggravated felony conviction bars him from obtaining U.S. citizenship, and that such a conviction will also result in his deportation. Therefore, defendant seeks to vacate his judgment of conviction.
Discussion
Defendant has moved to vacate his judgment of conviction on the grounds, inter alia, that it was obtained in violation of his constitutional right to the effective assistance of counsel. (CPL 440.10 [1] [h].) Specifically, defendant alleges that his attorney affirmatively misrepresented the immigration consequences associated with a bail jumping conviction by telling him that a plea to bail jumping in the first degree would not negatively impact his immigration status. Defendant also asserts that he would not have pleaded guilty to this crime if he had understood its negative immigration consequences.
At the time that defendant entered his guilty plea, the failure of a lawyer to advise a defendant of the immigration consequences of pleading guilty did not deprive the defendant of effective assistance of counsel. (People v Ford, 86 NY2d 397 [1995].) However, in 2010, the United States Supreme Court held that the failure to advise a client of the deportation consequences of a guilty plea could support an ineffective assistance of counsel claim (Padilla v Kentucky, 559 US 356 [2010]). Three years later, the Supreme Court held that Padilla broke new ground by announcing a constitutional obligation that had not previously been imposed upon criminal defense attorneys. (Chaidez v United States, 568 US —, —, 133 S Ct 1103, 1110-1111 [2013].) Therefore, the Supreme Court held that Padilla cannot be applied retroactively to convictions that became final prior to March 31, 2010 (i.e., the date Padilla was decided). (568 US at —, 133 S Ct at 1113.)[1]
Even though Padilla cannot be retroactively applied, defendant argues that his conviction should still be vacated because his attorney affirmatively misrepresented the immigration *883 consequences associated with his guilty plea. Specifically, defendant argues that Padilla only announced a new rule as to an attorney’s failure to inform his client of the immigration consequences associated with a particular guilty plea. Defendant also argues that an attorney’s failure to address these immigration concerns is readily distinguishable from an attorney’s affirmative misstatement of the immigration consequences relating to a guilty plea. Therefore, defendant argues that the limits placed on the retroactive application of Padilla should not apply to an ineffective assistance claim grounded upon an alleged affirmative misrepresentation.
In a case that was decided seven years prior to Padilla, the New York Court of Appeals recognized that, under certain circumstances, an attorney’s affirmative misrepresentation as to the immigration consequences of a guilty plea can support an ineffective assistance of counsel claim (People v McDonald, 1 NY3d 109 [2003]). Therefore, the rule against retroactive application of Padilla would not apply to an ineffective assistance of counsel claim that relies on an alleged McDonald violation.
Here, defendant’s claim relies on an alleged affirmative misrepresentation regarding the immigration consequences of his guilty plea. It is not dependent upon a mere failure to advise defendant of those consequences. Therefore, Chaidez and Padilla do not automatically preclude consideration of that claim.
However, in order to prevail on a McDonald claim, defendant must show: (1) that his attorney made an affirmative misrepresentation relating to the immigration consequences associated with his guilty plea; (2) that this misrepresentation fell below an objective standard of reasonableness; and (3) that there is a reasonable probability that defendant would not have entered a guilty plea absent this misrepresentation. {Id. at 114-115.) Because defendant has failed to show that his attorney made an affirmative misrepresentation regarding the consequences of his guilty plea under the immigration law as it existed when defendant entered his plea, the motion to vacate defendant’s judgment of conviction is summarily denied.
Specifically, defendant’s claim relies upon a version of the federal immigration laws that did not exist on the date of his conviction. The list of crimes that qualify as an “aggravated felony” under federal immigration law is contained at 8 USC § 1101 (a) (43). On September 14, 1994 (i.e., the date of defendant’s conviction), the only aggravated felonies on that list were *884 murder, drug trafficking, weapons trafficking, violent crimes with a minimum prison sentence of at least five years, and any attempt or conspiracy to commit these designated crimes. A bail jumping conviction does not appear anywhere on that list.[2]
The Immigration and Nationality Technical Corrections Act of 1994 (INTCA) dramatically expanded the list of crimes that qualify as an aggravated felony. However, these new aggravated felony designations only apply to convictions that were entered on or after October 25, 1994 (i.e., one month after defendant’s conviction was entered). (INTCA § 222 [b], Pub L 103-416, tit II, § 222 [b], 108 US Stat 4305, amending 8 USC § 1101.) In addition, a conviction for failing to appear in court still did not qualify as an aggravated felony after INTCA was enacted. Rather, only a conviction for failing to appear for service of a sentence qualified as an aggravated felony, and then only when the maximum potential sentence for the underling offense was at least 15 years (INTCA § 222 [a] [43] [P] [8 USC former § 1101 (a) (43) (P)]).
It is undisputed that defendant failed to appear for trial in connection with his 1990 felony drug case, that the trial did not proceed in his absence, and that he was never sentenced in connection with that case. Therefore, defendant’s bail jumping conviction also failed to qualify as an aggravated felony under the expanded statutory definition that was enacted shortly after defendant’s conviction was entered.
The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended the list of crimes that qualify as aggravated felonies. As relevant to defendant’s claim, this list of newly added aggravated felonies includes “a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years’ imprisonment or more may be imposed.” (8 USC § 1101 [a] [43] [T].) However, this aggravated felony designation only applies to convictions that were entered on or after April 24, 1996. (See AEDPA § 440 [f], Pub L 104-132, tit IV, subtit D, § 440 [f], 110 US Stat 1214.)
“The right to the effective assistance of counsel is guaranteed by both the Federal and State Constitutions.” (People v Baldi, 54 NY2d 137, 146 [1981].) “What constitutes effective assistance is not and cannot be fixed with yardstick precision, *885 but varies according to the unique circumstances of each representation.” (Id. at 146; see also People v Berroa, 99 NY2d 134, 138-139 [2002].) In New York, the standard for effective assistance of counsel “has long been whether the defendant was afforded meaningful representation.” (People v Henry, 95 NY2d 563, 565 [2000] [internal quotation marks omitted]; see also People v Benevento, 91 NY2d 708, 712 [1998].) “The phrase ‘meaningful representation’ does not mean ‘perfect representation.’” (People v Benevento, 91 NY2d 708, 712 [1998], quoting People v Aiken, 45 NY2d 394, 398 [1978]; see also People v Cummings, 16 NY3d 784, 785 [2011]; People v Modica, 64 NY2d 828, 829 [1985].) “So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met.” (People v Baldi, 54 NY2d at 147; see also People v Oliveras, 21 NY3d 339 [2013]; People v Koki, 74 AD3d 987, 987-988 [2d Dept 2010].)
The evidence submitted on this motion demonstrates that defendant was afforded competent, meaningful and effective representation. Defendant’s attorney negotiated a highly favorable plea bargain by securing dismissal of two class B felony drug charges in return for defendant’s guilty plea to one class D felony, with an agreed sentence of 1 to 3 years in state prison, and the opportunity for release in six months upon successful completion of the shock incarceration boot camp program. In addition, the definition of an aggravated felony contained in the federal immigration law was not expanded to include a conviction for failing to appear in court until nearly two years after defendant’s conviction was entered. Therefore, applying the law as it existed when defendant was convicted, the motion to vacate his judgment of conviction based upon ineffective assistance of counsel is summarily denied. (People v McDaniel, 13 NY3d 751 [2009]; People v Henry, 95 NY2d 563 [2000]; People v Trovato, 68 AD3d 1023 [2d Dept 2009]; People v Alexis, 65 AD3d 1160 [2d Dept 2009].)
Finally, defendant has moved to vacate his judgment of conviction on due process grounds. Specifically, defendant argues that his guilty plea was not knowingly and voluntarily entered because Judge Marlow did not advise him of the possible deportation consequences associated with his plea.
This argument relies upon People v Peque (22 NY3d 168 [2013]), which held that, before accepting a felony guilty plea *886 from a noncitizen defendant, a trial judge must advise the defendant that this plea may result in deportation. This argument is not properly raised in a CPL 440.10 motion because it relies upon facts that were clear from the face of the record, and should have been raised on direct appeal. In addition, while Peque may be retroactively applied when a case is pending on direct appeal, it will not be retroactively applied to permit a collateral attack on a conviction, particularly when that conviction is more than 20 years old. (See People v Cuadrado, 9 NY3d 362, 365 [2007] [finding that defendant should have raised his claim on direct appeal rather than in a CPL 440 motion, and that if defendant was permitted to mount a collateral attack on his conviction 12 years later, it “would be at best difficult and at worst impossible for the People to revive the case against him now, and there is no good reason to require them to do so”].) Therefore, defendant’s motion to vacate his judgment of conviction based upon these alleged due process violations is summarily denied (People v Lovejoy, 136 AD3d 513 [1st Dept 2016]; People v Pena, 132 AD3d 910 [2d Dept 2015]). Based on the foregoing, it is hereby ordered, that defendant’s motion to vacate his judgment of conviction pursuant to CPL 440.10 is denied.

. The Court of Appeals has also declined to apply Padilla retroactively in state court post-conviction collateral proceedings brought under CPL article 440 (see People v Baret, 23 NY3d 777 [2014]).

. That list was established by the Anti-Drug Abuse Act of 1988, as amended by the Immigration Act of 1990.